Olen V. **RITTER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Kenneth **MEADOR**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Guy R. **COX**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Paul C. **BRIGGS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Nos. 5194–5197.

United States Court of Appeals Tenth Circuit.

Jan. 23, 1956.

Rehearing Denied Feb. 20, 1956.

---

A. L. Shortridge, Joplin, Mo. (William H. Burden, Joplin, Mo., was with him on the brief), for appellants.

Robert S. Rizley, Tulsa, Okl. (B. Hayden Crawford, Tulsa, Okl., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, HUXMAN, Circuit Judge, and CHRISTENSON, District Judge.

CHRISTENSON, District Judge.

Nine defendants by indictment were charged with various federal offenses relating to intoxicating liquors before the United States District Court for the Northern District of Oklahoma. A jury was waived. Some of the defendants either pled guilty or were acquitted at the trial. Cox, Briggs, Ritter and Meador,

four of the defendants who were convicted, have appealed. Presented here by them are questions involving sufficiency of the evidence to support the convictions, claimed variance and the trial court's asserted lack of jurisdiction of the offenses charged.

Appellants Guy R. Cox and Paul C. Briggs were convicted on count one of the indictment, which charged conspiracy in contravention of 18 U.S.C.A. § 371. The alleged objects of the conspiracy were to violate 18 U.S.C.A. § 1262 by importing intoxicating liquor into the State of Oklahoma, 26 U.S.C.A. § 3253 (1939) by carrying on the business of wholesale liquor dealers without the payment of special tax, 26 U.S.C.A. § 2857 (1939) by failing to keep true records, and 27 U.S.C.A. § 203 by purchasing distilled spirits for resale at wholesale prices without permit. The period of the conspiracy is alleged to have been from October 1, 1951 to September 16, 1954. The Government alleged that others involved were the defendants, J. R. Addington, Elizabeth Austin, Hershel L. Mathis, Harrison F. Richardson and George M. Shaner, and co-conspirators not charged were alleged to have been Ben Austin, Mary Elizabeth Mathis and Leon Graham, together with others whose names were unknown. Some eighteen overt acts were set out in the indictment. Elizabeth Austin entered pleas of guilty to counts one and six of the indictment, and Addington, Mathis, Richardson and Shaner were acquitted on count one. Cox was acquitted on all other counts of the indictment. The Court found the defendant Shaner guilty as charged in counts two, three and four, and found the defendant Addington guilty as charged in count five. The defendants Meador, Ritter, Mathis and Richardson were convicted on count six, charging the importation of intoxicating liquor into the dry State of Oklahoma. 18 U.S.C.A. § 1262.

The first contention of appellants Cox and Briggs is that the evidence is insufficient to sustain their conviction of conspiracy under count one of the indictment, in that it failed to establish that they had conspired with anyone.

The evidence shows these facts and circumstances: The defendants, J. R. Addington, Hershel L. Mathis and Harry McCarthy, who was not a party but who appeared as a witness, resided in the State of Oklahoma, where the sale of liquor is prohibited. They appear at various times to have been so-called bootleggers. Cox owned the D–X Service Station, a combined gas station and liquor store, at Noel, Missouri. He owned a wholesale liquor stamp during most of the periods material herein, but had no basic permit required of wholesale liquor dealers. He sold the D–X Service Station to Ben Austin, husband of the defendant, Elizabeth Austin, in September, 1951, but continued to operate on his own account the Southern 71 Tobacco and Liquor Store near Noel, Missouri. In the course of his negotiations with the Austins concerning the D–X Service Station, Cox stated that the latter would have to sell liquor in case quantities if they bought the store or they "couldn't make it"; and if Austin did not want to "fool with that kind of stuff", Cox would pay him $2 per case over cost for all the whiskey he would let him have. Cox and Austin went together to Joplin, Missouri, to obtain licenses and wholesale liquor dealer stamps for Austin's new venture. Both Cox and Austin were required to make periodic reports to the Bureau of Internal Revenue of wholesale transactions. However, Cox told Austin in the presence of Elizabeth Austin that he expected to show "no transactions" on his monthly reports. He did so falsify his reports in that manner during the period of the alleged conspiracy, although he made numerous sales of whiskey to persons engaged in the liquor business in Oklahoma. Ben Austin died in February, 1952, and Elizabeth Austin continued the operation of the D–X Service Station. She also showed "no transactions" on her monthly reports to the Bureau of Internal Revenue, notwithstanding that during the period involved she made substantial sales by the case with some regularity to Cox, Mathis and McCarthy, all at a premium varying between $1.75 and $2.75 above cost to her.

During the time Cox was buying whiskey from her, he was also operating a liquor store on his own account through which presumably he could have obtained whiskey at wholesale for legitimate purposes without the payment of any premium. Mrs. Austin testified that the reason they reported no wholesale transactions was because they couldn't put down that the liquor was sold in a dry state when it was against the law. The employees of Ben Austin, and later of Elizabeth Austin, would lug the whiskey and Cox and the defendant Briggs, his employee, would come to the D–X Service Station to pick it up. Ritter and Meador worked for Mrs. Austin, and when the latter terminated his employment with Mrs. Austin he went to work for Cox. Mrs. Austin sold the station back to Cox in May, 1953. Afterwards, Briggs assisted in sales of liquor by the case to McCarthy. Such sales were in ten to twenty-five case quantities, and the liquor was taken to Oklahoma by McCarthy. Mathis continued to buy liquor in wholesale quantities from the D–X Service Station after its re-acquisition by Cox. On two occasions in 1954, one Pearl Jean Rockalman of Tulsa came to Noel, Missouri with the defendant Addington, and went to the Cox D–X Service Station for the purpose of buying liquor with money loaned by her to Addington. After Addington went into the store and talked to Cox, liquor was loaded into the car and taken back to Tulsa at one time, and at another time en route to Oklahoma, Mrs. Rockalman and Addington were apprehended by alcohol and tax unit agents. It was shown that checks drawn by Elizabeth Mathis, wife of Mathis, on the Utica Square National Bank, payable to "Cash" between November 11, 1953 and December 28, 1953, varying in amounts between $422.90 and $1,756.05, were all deposited within a few days after they were drawn, in the account of Cox D–X Service Station, Noel, Missouri. The drawer of the checks ran her husband's liquor business in Tulsa, Oklahoma during that period and arranged for the purchase of liquor from the defendant Shaner by paying to

him at least some of the checks which were later deposited in Cox's account. Between January 8, 1954 and January 26, 1954 Shaner purchased four cashier's checks drawn on the Farmers and Merchants State Bank of Tulsa, Oklahoma, varying in amounts from $250 to $1,500, all payable to himself, endorsed by him, and bearing the second endorsement of Cox D–X Service, Noel, Missouri. On February 2, 1954, a cashier's check was drawn on the same bank by Harry McCarthy, payable to Cox D–X Service Station, Noel, Missouri, in the amount of $175 and endorsed by Cox D–X Service Station. From December, 1951 to June, 1954, more than one hundred telephone calls were made between the telephone numbers of Mathis in Tulsa and Cox in Noel, Missouri. Most of these calls were station-to-station calls, but several were made from Mathis' number in Tulsa to Cox, person-to-person, at Noel. From September, 1953 to January, 1954, more than forty telephone calls were made between Shaner's telephone number in Tulsa and Cox's number in Noel, Missouri. Two were to Cox, person-to-person.

Conspiracy need not be proved —indeed, by the very nature of things, generally cannot be—by direct evidence. In view of the foregoing facts concerning which there is little controversy in the record, and the inferences reasonably to be drawn therefrom, we cannot say that there was not substantial evidence to support the conviction of both Cox and Briggs on the conspiracy count. Direct Sales Co., Inc., v. United States, 1943, 319 U.S. 703, 63 S.Ct. 1265, 87 L. Ed. 1674; Berenbeim v. United States, 10 Cir., 1947, 164 F.2d 679, certiorari denied 333 U.S. 827, 68 S.Ct. 454, 92 L. Ed. 1113; United States v. Wroblewski, 7 Cir., 1939, 105 F.2d 444; United States v. Tuffanelli, 7 Cir., 1942, 131 F.2d 890; Braverman v. United States, 6 Cir., 1942, 125 F.2d 283, reversed on other grounds, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23; Susnjar v. United States, 6 Cir., 1928, 27 F.2d 223; United States v. Scott, C.C.N.D.Ga.1905, 139 F. 697, affirmed 5 Cir., 165 F. 172. See

also McDonough v. United States, 10 Cir., 227 F.2d 402. The record indicates not merely that appellants furnished supplies later used for an illicit purpose, but that Cox and Briggs intended to promote, and actively cooperated and participated in, the illegal purposes involved. Thus, United States v. Falcone, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128, relied upon by appellants, is not controlling, nor in the respect just mentioned is Bacon v. United States, 10 Cir., 1942, 127 F.2d 985. The instant case comes rather within the doctrine of Direct Sales Co., Inc. v. United States, supra. As pointed out in United States v. Tramaglino, 2 Cir., 1952, 197 F.2d 928, certiorari denied 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670, the Falcone case dealt with a supplier of goods, innocent within themselves, who does nothing but sell those goods to a purchaser who, to the supplier's knowledge, intends to and does use them in the furtherance of an illegal conspiracy. The Bacon case as to the issue of conspiracy involved a similar state of facts. This is not the situation here, where knowledge, participation and concealment appear.

The second contention of appellants Cox and Briggs is that there exists a fatal variance between the indictment and the proof, in that one conspiracy is charged and the proof, at best, indicated two or more conspiracies, involving different parties.

■ Apparently, it was intended to charge a conspiracy having its inception at about the time the Austins took over the D–X Service Station from Cox. In view of subsequent developments shown by the evidence, although not expressly admitted by Mrs. Austin, it could reasonably be concluded that the Austins and Cox reached at least a tacit understanding that operations would be conducted in such a way that wholesale liquor purchases could be made for transportation to Oklahoma without any reporting that might lead to investigation by government officials; that otherwise, the station could not be made to "go", and that a premium would be received by its operator above wholesale prices for participating in such transactions, not limited to Cox's purchases, but involving the cooperation of Oklahoma bootleggers either directly or indirectly. Manifestly, such an arrangement would involve most, if not all, of the illegal objects specified in the indictment. Other details suggesting an overall conspiracy have been referred to above. That Briggs may have joined the conspiracy later did not change it, nor did the circumstances that Cox subsequently repurchased the station and sold wholesale at a premium to others. Mrs. Austin's contact with Mathis in Oklahoma when she solicited his business in company with Meador was in line with this conspiracy, as were other transactions involving McCarthy, and possibly Shaner and Addington. Certainly, the evidence supports the view that Cox, the Austins and their respective employees, Briggs, Meador and Ritter, were a part of the same general plan. Because the proof did not establish every overt act charged, or failed to connect up every alleged co-conspirator with the basic conspiracy charged, does not necessarily mean that the alleged conspiracy was thereby broken up into independent fragments. Actors may drop out and in, there may be changes in the details of operation, and members need not know all of the other participants or the refinements of the plan. It is sufficient that those charged knew the purpose of the conspiracy and agreed to become parties to a plan to effectuate that purpose. United States v. Tramaglino, supra; Braverman v. United States, supra; Booth v. United States, 10 Cir., 1932, 57 F.2d 192; Berenbeim v. United States, supra. In the latter two cases this circuit, as against the claim that there was fatal variance, held that only one conspiracy, in various manifestations, was shown by the evidence. While the circumstances of the instant case are not as clear to the same effect, we are inclined to the opinion that for all practical purposes there was no variance.

■ But even though we should be wrong in this conclusion, we are clearly

of the view that if there were a variance, it was not material or prejudicial. Appellants cite Marcante v. United States, 10 Cir., 1931, 49 F.2d 156; Brooks v. United States, 5 Cir., 1947, 164 F.2d 142; Canella v. United States, 9 Cir., 1946, 157 F.2d 470, and Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L. Ed. 1557, in support of their contention that proof of independent, separate and distinct conspiracies will not sustain a conviction of an overall conspiracy such as alleged in count one. Without belaboring at this point our belief that there were no such "independent, separate and distinct" conspiracies shown here, it must be conceded that some of these decisions and also certain additional decisions from this circuit, Berenbeim v. United States, supra, and Booth v. United States, supra, express the general rule that any such variance is fatal. If this language is to be interpreted as indicating that without regard to the question of materiality or prejudice, such variance makes reversal mandatory in every case, the interpretation is too broad. Such cannot be considered the intent of decisions, particularly since United States v. Berger, 2 Cir., 1934, 73 F.2d 278, reversed on other grounds 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 and Kotteakos v. United States, supra, which in line with Federal Rules Criminal Procedure, rule 52(a), 18 U.S.C.A., make the true test whether the substantial rights of the accused have been prejudiced. Here the indictment and the proof substantially correspond, there is no indication that the defendants were misled at the trial, since the case was tried to an experienced and able judge no possible misapprehension of a jury from collateral evidence was involved, and the defendants were not deprived of protection against other prosecutions for the same offense. Moreover, even though other defendants, had they been convicted, might have some standing to raise the question of variance, appellants Cox and Briggs, being central figures around which most of the circumstances shown by the evidence re-

volved, and concerning whom there was no substantial danger in the evidence of "transference of guilt", cannot complain. In the latter connection, reference is made to Canella v. United States, supra, holding that in view of at least five separate conspiracies involving at least twelve persons, it could not be said that as to some of the defendants, prejudice did not result; but that as to Canella, a key figure, the variance did not prejudice any substantial right.

■ Appellants Briggs and Cox next contend that there is no proof of the commission of any overt act within the jurisdiction of the trial court in furtherance of any conspiracy charged against themselves. There is evidence tending to show that Cox and Briggs sold liquor to Mathis for the purpose of its importation into the State of Oklahoma, that Cox and Briggs sold liquor to McCarthy for the same purpose, and that Mrs. Austin in the course of the conspiracy did likewise. These overt acts, considered in the light of the other circumstances referred to above, subjected the appellants to the jurisdiction of the trial court. Direct Sales Co., Inc., v. United States, supra.

■■ Meador and Ritter assert that the evidence is insufficient to support their conviction on the importation count of the indictment. The evidence, with the reasonable inferences to be drawn therefrom, is adequate to show that Ritter and Meador assisted Mathis in the commission of the importation offense. Mathis, as principal, was convicted of this offense as charged, and the evidence was abundant to sustain this conviction. Ritter and Meador worked for Mrs. Austin. They brought the liquor involved in the importation count from the D–X Service Station to Mrs. Austin's home and loaded it into two cars under Mathis' control, one of which was being driven by him. The proof tends to show that Ritter and Meador assisted in the whole transaction. Prior thereto, they had helped Mrs. Austin in previous liquor sales to Mathis and both were present during a conversation in which arrange-

ments were made by Mathis to buy liquor from Mrs. Austin. Meador was with Mrs. Austin when she initially contacted Mathis in Tulsa to solicit his business. The evidence is sufficient to indicate that Meador and Ritter knew that the liquor was to be taken by Mathis to Tulsa, Oklahoma. They aided and abetted in the commission of the importation offense and are, therefore, punishable as principals. 18 U.S.C.A. § 2; Bacon v. United States, supra. And it avails them nothing that they were employees. United States v. Scott, supra; Susnjar v. United States, supra.

 Contrary to the final contention of Ritter and Meador, the trial court had jurisdiction to try them on the importation count since it had jurisdiction over the substantive offense of importation of liquor into Oklahoma, and over the principal. Hoss v. United States, 8 Cir., 1916, 232 F. 328; Bacon v. United States, supra.

As to none of the appellants do we find prejudicial error in the record. The judgment as to each is accordingly affirmed.