**UNITED STATES of America**
v.
**Peter J. MIGLIORINO, Appellant.**
**No. 11893.**

United States Court of Appeals
Third Circuit.

Argued Oct. 2, 1956.

Filed Nov. 2, 1956.

Rehearing Denied Dec. 28, 1956.

8

George J. Todaro, New York City (Mark E. Dolin, Philadelphia, Pa., on the brief), for appellant.

Joseph L. McGlynn, Jr., Asst. U. S. Atty., Philadelphia, Pa. (W. Wilson White, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

The appellant, Peter J. Migliorino, alias Petey Blue, was tried in the District Court for the Eastern District of

Pennsylvania and was convicted of transporting a stolen motor vehicle in interstate commerce in violation of Section 2312 of Title 18 of the United States Code. He was convicted also of violation of Section 371 of Title 18 for conspiracy to transport a stolen motor vehicle in interstate commerce. Concurrent sentences of thirty months' imprisonment were imposed for each offense.

The sole government witness to the charges against appellant Migliorino was one Frank Caven, a co-conspirator. According to his testimony, Migliorino was present in the back room of a bar in New York City while a conspiracy to steal and transport cars in interstate commerce was being formed. Also present at that meeting were Sam Arliss, part owner of the bar, and Vincent J. Panetta, a used car dealer from Philadelphia. Caven, who was serving customers at the bar, was present from time to time. The conversation between Panetta and Arliss concerned the price to be paid for the stolen cars, the year and model of the cars to be delivered to Panetta, and the kind of titles which were to be produced for the stolen cars. Although Migliorino was present throughout this conversation, there is no evidence as to what he said. Later there was an agreement that appellant Migliorino was to share in the proceeds derived from the sale of the stolen automobiles delivered to Panetta in Philadelphia.

After Arliss informed Caven that the first car was ready for delivery to Panetta, Caven agreed to drive it from New York City to Philadelphia. Early on the morning of February 13, 1955, Arliss gave Caven a forged New York State registration certificate and a blank driver's license. Caven and Migliorino then hired a cab and traveled to the spot where the automobile was parked. It was there that Migliorino pointed out the stolen car to Caven. Both men entered the automobile and drove for several blocks. Then Migliorino got out, and Caven later continued his journey to Philadelphia. The next day the Philadelphia police apprehended Caven

while he was delivering the car to Panetta's used car lot. After fabricating a story about the ownership of the car, Caven later admitted that the registration certificate was forged and related to the police the facts of the conspiracy.

On April 13, 1955, Caven was indicted for interstate transport of a stolen motor vehicle in violation of Section 2312 of Title 18 of the United States Code. He pleaded guilty. On May 5, 1955, Arliss, Migliorino, and Panetta were indicted for conspiracy to transport stolen cars in interstate commerce; although Caven was named as co-conspirator, he was not indicted in this case. Arliss and Migliorino were also indicted on the substantive count. All three were tried in the District Court for the Eastern District of Pennsylvania and found guilty on the conspiracy charge. Arliss and Migliorino were also found guilty on the substantive charge. This is the appeal of defendant Migliorino only.

It is urged by the appellant first that there is insufficient evidence to sustain a conviction on either the conspiracy charge or the substantive charge; and, second, that the defense was prejudicially limited in its cross-examination of a government witness. We think both contentions are without merit.

■■ Criminal plottings are spawned in secrecy, and the very nature of conspiracy often precludes proof by direct evidence. For this reason it is an axiomatic principle of law that a conspiracy charge may be sustained on circumstantial evidence alone. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Ritter v. United States 10 Cir., 1956, 230 F.2d 324, 327. Overt acts done in apparent pursuance of a common plan serve as evidence to demonstrate the existence of a conspiracy. United States v. Georga, 3 Cir., 1954, 210 F.2d 45, 48; Nilva v. United States, 8 Cir., 1954, 212 F.2d 115, 121.

Inasmuch as this case contains direct evidence that Migliorino was present while the criminal scheme was being formed, it goes far beyond the minimum

evidentiary requirements in conspiracy cases. Our position was made clear in United States v. Georga, supra:

> "* * * To establish conspiracy this court has said many times that it is not necessary to show any formal agreement among the conspirators. Judge Leahy found the picturesque language to express the point when he quoted: 'The picture of conspiracy as a meeting by twilight of a trio of sinister persons with pointed hats close together belongs to a darker age.' * * * The common plan can be and must often be established by what people do rather than by what they say." 210 F.2d at page 48.

 Appellant contends that there is absolutely no proof that he heard the conversation or knew of the subject matter of the discussion when the conspiracy was formed. It will be remembered that after that conversation it was agreed that Migliorino would share in the proceeds of the sale. Later he pointed out the stolen car to Caven and rode in it with him for several blocks. In the light of these facts, appellant will not be heard to say that he sat in on the conversation and did not know that a conspiracy existed. His actions belie his words. Nor it it of assistance to the defense that the government's sole witness was a co-conspirator. It is no longer open to doubt that a jury may convict on the testimony of an accomplice alone. United States v. Marpes, 3 Cir., 198 F.2d 186, 188, certiorari denied 1952, 344 U.S. 876, 73 S.Ct. 170, 97 L.Ed. 678; United States v. Fawcett, 3 Cir., 1940, 115 F.2d 764, 768, 132 A.L.R. 404.

 It is clearly within the province of the triers of fact to weigh the evidence and determine the credibility of witnesses. In view of the verdict of guilty, it is our duty to consider the facts in a light most favorable to the government. Glasser v. United States, 1941, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. Upon a review of the record, we find that there is substantial evidence to support both the conspiracy charge and the substantive charge. Migliorino knew of the existence of the conspiracy and performed overt acts valuable to its furtherance. Thus he became responsible not only for the conspiracy, but also the substantive offense. Marino v. United States, 9 Cir., 1937, 91 F.2d 691, 696, 113 A.L.R. 975, certiorari denied sub nom. Gullo v. United States, 1938, 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593; 18 U.S.C. § 2(a).

Appellant also insists that he was prejudiced by a ruling of the district court sustaining an objection to this question asked of the government's witness Caven on cross-examination:

> "Q. You have a bad memory, haven't you? A. I have.
>
> "Q. Especially in certain spots but it is good as to other things, isn't it. Would you lie to save yourself a substantial jail sentence in this case?
>
> "Mr. McGlynn: Objection, Your Honor.
>
> "The Court: Sustained."

 Although Caven had pleaded guilty to the offense charged, he was not as yet sentenced. The question was evidently aimed at impeaching the credibility of Caven and sought to elicit information from which it could be inferred that his testimony was impelled by the hope of leniency. Taken alone, it would seem that this question was proper and should have been allowed.[1] It is always available-to the defense to show by cross-

---

1. This assumes, of course, that the question be in proper form. Obviously the form of the question asked here was not proper because it was argumentative and contained actually two questions in one. Counsel apparently was not interested in an answer to the first question and employed it merely as a means of conveying a premature argument to the jury. The court could properly have sustained the objection to the question for this reason alone.

examination that the testimony of a government witness was given in return for a promise of lighter sentence or other preferential treatment. We decided in United States v. Hogan, 3 Cir., 1956, 232 F.2d 905, that this right of the defendant is so valuable that a denial of it constitutes reversible error and an abuse of the trial court's discretion in the limitation of cross-examination. See also Gordon v. United States, 1953, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447.

The Hogan case, however, discloses that no cross-examination at all was permitted on the point of whether the witness (who had pleaded guilty but was not yet sentenced) expected any preferential treatment in return for his testimony. A close study of the record in this case, on the other hand, reveals that the defense, on two previous occasions was given wide latitude to explore the possibility that the witness was motivated by hope of lighter sentence or by something other than the desire to relate the facts truthfully.

First, the defense was permitted without objection to ask this series of questions:

"Q. Have you been charged with this crime formally? A. Yes, sir.

"Q. Have you been indicted? A. Yes, sir.

"Q. Have you been sentenced? A. I pleaded guilty.

"Q. You pleaded guilty? A. That is correct.

"Q. What was your sentence, sir? A. And the sentence is pending.

"Q. Were there any conditions or strings? A. No.

"Q. You weren't promised anything? A. Nothing.

\* \* \* \* \*

"Q. Do you hope to gain any benefits by turning state's evidence? A. No.

"Q. You don't hope to gain anything? A. No.

"Q. You are just doing it because of your conscience, is that correct? A. That is correct."

Later in the cross-examination of Caven, counsel for appellant asked this series of questions:

"Q. When did you decide to tell the truth then? A. At the advice of my counsel the following day, on Tuesday.

"Q. Did your counsel tell you you had better tell the truth because the judge will take it easy on you that way? A. No, he did not.

"Q. He didn't tell you that? A. No.

"Q. Well, did you have any personal motive to bring in these defendants? A. No, I did not.

"Q. You have no personal ax to grind as to them? A. No."

On two separate occasions, then, the defense was allowed to inquire searchingly of the government's witness whether or not he testified in the hope of receiving a more favorable sentence. It follows that the fair trial requirements of United States v. Hogan, supra, have been amply satisfied.

Any other testimony along this line would manifestly be cumulative. What we said in United States v. Stoehr, 3 Cir., 196 F.2d 276, 281, note 3, certiorari denied 1952, 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643, is applicable here:

"This line of inquiry was actually covered adequately just a few moments earlier \* \* \*. The trial court was well within its discretion in closing the door to such repetitious collateral inquiry \* \* \*."

It is within the discretion of the trial court to control the permissible latitude of cross-examination. Its rulings will be disturbed only on a clear showing of abuse of that discretion. This case discloses no such abuse.

For the foregoing reasons, the judgment of conviction will be affirmed.