**UNITED STATES of America**

v.

**James G. AMEDEO, Appellant.**

**No. 12993.**

United States Court of Appeals Third Circuit.

Argued Feb. 2, 1960.

Decided March 28, 1960.

George R. Sommer, Newark, N. J. (George P. Helfrich, Newark, N. J., on the brief), for appellant.

Michael A. Querques, Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Daniel E. Isles, Asst. U. S. Atty., Newark, N. J., on the brief), for appellee.

Before GOODRICH, HASTIE and FORMAN, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a conviction of Amedeo in the United States District Court for the District of New Jersey. The sole question is whether the evidence against him is sufficient to uphold his conviction. Since the jury has found against him all facts and permissible inferences therefrom stand in favor of the prosecution.

Amedeo was indicted with two men named respectively Mastrocola and Ricciardi. These two men were accused both of conspiracy and substantive offenses. Amedeo, however, was only charged with conspiring with them to commit offenses having to do with transportation of a stolen automobile in interstate commerce. The charge included the following: conspiracy to transport in violation of 18 U.S.C.A. § 2312; conspiracy to sell and dispose in violation of 18 U.S.C.A. § 2313; conspiracy to conceal in violation of 18 U.S.C.A. § 2313; and conspiracy to aid and abet in the transportation, sale, concealment and disposition in violation of 18 U.S.C.A. §§ 2, 2312, 2313. The following are the facts as presented in the prosecution's evidence and necessarily found by the jury.

A car parked near the corner of Second Avenue and Sixty-fifth Street in New York City was stolen on June 24, 1958. It was a red and white 1958 Ford with Florida license plates. Amedeo and a helper named McNair stole the automobile and took it to a garage in Maspeth, Queens, New York. This garage had earlier been rented by McNair at Amedeo's direction. There was evidence to show that the type of car thus stolen had been selected prior to the theft; in other words, that the theft was a tailor-made job, not one for which any car would do. There was also testimony from which a jury could find that some fourteen days before this theft (June 10, 1958) Amedeo had had opportunity to steal a book of New York State automobile ownership certificates from the office of Dyer Motors Incorporated, 8026 Queens Boulevard, Elmhurst, New York. One of these ownership certificates was subsequently filled out by a fictitious "Hogan Ford-Mercury" dealer and listed

a four-door 1958 Ford as having been sold to one "Saul Levy."

Now to get back to the stolen car. At the garage where McNair and Amedeo took the car, the vehicle was "stripped." Florida license plates were removed and New Jersey license plates substituted. The serial plate was removed. The locks on the right-hand door and trunk were removed, and all the stuff thus removed from the car was put in a bag and thrown by Amedeo into a river. Subsequently they took the car to the Apollo Garage on Delancey Street in New York City and left it there. Amedeo and McNair took the parking ticket to a tavern on Forsythe Street in New York where Amedeo gave it to someone whom McNair was unable to identify.[1]

This is all the direct evidence there is about Amedeo's participation except that later Amedeo told McNair that the car had been picked up by the authorities and that they might have to find another car.[2]

In the meantime, this car was picked up by someone and taken to New Jersey. A false invoice from the non-existent "Hogan Ford-Mercury" dealer, along with the forged ownership certificate, was the basis of the issuance of a New Jersey ownership certificate in the name of "Saul Levy" and the subsequent transfer of that certificate to Mrs. Rita Reino. Mrs. Reino's husband testified that he paid $1,300 to Mastrocola and Ricciardi for the car.

The car was recovered from the Reinos on July 16, 1958.

■■ If this case involved a conviction of Amedeo for stealing an automobile in New York we would have no problem. But is there enough here to support a conviction for conspiracy? Conspiracy involves some action in concert among conspirators but no one claims any more that there must be express agreement among them.[3] And a conspiracy may be proven by circumstantial evidence alone.[4]

It is a matter of some significance that the car theft was a made-to-order job which must have been the result of prior communication between somebody who wanted a particular type of car and Amedeo. It is significant that Amedeo could have stolen the book of New York ownership certificates prior to the theft of the car. It is highly significant that the license plates were changed to New Jersey plates and that the car was concealed in the rented garage while the change was made. Leaving a car in a parking lot and delivering the ticket for it to a tavern indicates an arrangement with someone to pick it up and the fact

1. Amedeo himself did not testify. All of the testimony pertaining to the events from the time of the theft to the time the parking stub was left at the tavern came from McNair. McNair was not indicted nor was he listed as a co-conspirator in the indictment of the others.

2. McNair testified that Amedeo made these remarks sometime during "the following week" after the delivery of the car to the Apollo garage. Counsel for Amedeo contends that the effect of this is to place the conversation as having occurred during the first week in July, which would be well before the actual recovery of the car on July 16. From this counsel argues that the prosecution contention, that this conversation shows that Amedeo was still an interested party after the recovery of the car, is unfounded. However, the jury could easily have believed that McNair's time estimate was slightly erroneous while believing him in all other respects. The conversation would seem to make no sense unless it was made after the authorities had recovered the car.

3. See United States v. Georga, 3 Cir., 1954, 210 F.2d 45, 48, and cases cited. See generally, Developments in the Law: Criminal Conspiracy, 72 Harv.L.Rev. 920, 925–29 (1959); Cousens, Agreement as an Element in Conspiracy, 23 Va.L.Rev. 898 (1937).
   As Judge Leahy said in William Goldman Theatres, Inc. v. Loew's, Inc., 3 Cir., 1945, 150 F.2d 738, 743 note 15: "The picture of conspiracy as a meeting by twilight of a trio of sinister persons with pointed hats close together belongs to a darker age."

4. United States v. Migliorino, 3 Cir., 1956, 238 F.2d 7, 9. See Developments in the Law: Criminal Conspiracy, 72 Harv.L. Rev. 920, 984 (1959).

that it was to be picked up with New Jersey license plates on at least furnishes a foundation for concluding that that someone was to take the car to New Jersey. That someone could be found to be a person with whom Amedeo was in contact. When the car shows up in New Jersey, the transaction in selling it is handled by Mastrocola and Ricciardi. When the stolen car is recovered, Amedeo knows about it and tells McNair that perhaps they will have to steal another.

■ Argument for the appellant suggests that at the end of the Government's case perhaps a stretch of the imagination would permit a conclusion that there was a conspiracy among the three defendants. But, the argument runs, that disappears at the end of the entire case because Mastrocola and Ricciardi denied ever knowing Amedeo before they met in court at the trial. That argument is of no weight. The jury certainly did not need to believe these two men, especially in light of Mastrocola's testimony that he knew Amedeo's father and uncle.

We conclude that the evidence, even though circumstantial, is sufficient to sustain the conviction.

The judgment will be affirmed.

HASTIE, Circuit Judge (concurring).

I agree that the evidence here was sufficient to permit a jury to find that Amedeo was a member of a conspiracy to transport a stolen vehicle in interstate commerce. I am not satisfied that, on the present record, Ricciardi and Mastrocola, the only co-conspirators named or indicated in the indictment, were shown to have acted with any awareness that an interstate transaction was involved. Thus, their joinder in the charged conspiracy seems not to be established. Cf. United States v. Crimmins, 2 Cir., 1941, 123 F.2d 271; Linde v. United States, 8 Cir., 1926, 13 F.2d 59. I conclude, therefore, that the proof showed a conspiracy of the kind charged between Amedeo and some unnamed person or persons but not of Amedeo and Ricciardi or Mastrocola.

This was a variance. But I think it was not a significant variance and does not afford sufficient reason for a reversal. It could have been avoided merely by charging that, in addition to Amedeo, Ricciardi and Mastrocola, "persons unknown" joined in the conspiracy. Cf. Linde v. United States, supra. I do not see any way in which this omission resulted in surprise or harm to Amedeo at the trial. No extrajudicial statements of Mastrocola or Ricciardi were used against Amedeo and there is no basis for believing or fearing that guilt was attributed to Amedeo for their wrongdoing. Amedeo was shown to have conspired with someone to cause the interstate movement of the stolen vehicle in question and that was the essence of the charge against him.

Only if a variance affects "the substantial rights" of a party is it reversible error. 28 U.S.C. § 2111. With Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, compare Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. And see Note, 57 Colum.L.Rev. 387, 398–404 (1957). This was not the case here.

Accordingly, I agree that the conviction of Amedeo should stand.