**Jessie HUGHES, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 22457.

United States Court of Appeals,
Ninth Circuit.

May 19, 1970.

Johnnie L. Cochran, Jr., of Cochran & Atkins, Los Angeles, Cal., for appellant.

Wm. Matthew Byrne, Jr., U. S. Atty., Ronald Morrow, Robert L. Brosio, Henry J. Novak, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and BURKE, District Judge.

BURKE, District Judge:

Jessie Hughes appeals from his conviction, following a trial by jury, on all nine counts of a nine-count indictment charging three separate knowing sales and concealments of heroin in violation of 21 U.S.C. § 174 and 26 U.S.C. § 4705(a).

Testimony elicited at the trial established that on the three occasions described in the indictment appellant sold heroin to William B. Jackson, an agent of the Federal Bureau of Narcotics. On each occasion the meeting was set up by one Bill Davis, a government informer who was also responsible for introducing appellant to agent Jackson just before the first sale. Two of the sales were made in Davis's home and the third took place in an alley just behind his home.

At the trial appellant became a witness and admitted his participation in all transactions. His defense was based on two grounds: (1) the existence of such limited and defective mental capacity (although not so limited or defective as to constitute insanity) as to render him incapable of forming the requisite specific intent to commit the crime, and (2) entrapment. Under the peculiar circumstances of this case, the two defenses were closely intertwined.

Fundamentally, appellant asserted that he was a mere dupe of the informant Davis. He testified to the effect that on each occasion Davis initiated the idea of making the sale, Davis or one of his "girls" picked him up and brought him to the house for the purpose of conducting the sale. Davis provided him with the narcotics to sell to Jackson, Davis schooled him in exactly what to say to Jackson during the transaction, and Davis took all the money from him after Jackson had departed. In sum, appellant testified that had Davis not requested him to do so, appellant would never have possessed or sold narcotics to agent Jackson.

The entire success of this line of defense depended upon convincing the jury that appellant was of such limited intelligence and so susceptible to suggestion that he could be induced by Davis to commit crimes which he was incapable of consummating on his own and would never have attempted absent persuasion by Davis. To establish this defense appellant intended to rely on his own testimony, the testimony of a court appointed psychiatrist, the testimony of informant Davis and the cross-examination of agent Jackson. The trial court, however, severely restricted appellant's case by curtailing the cross-examination of agent Jackson with regard to the possible motive and bias of the informant and by excluding testimony of the psychiatrist with regard to appellant's mental capacity.

Obviously one of appellant's primary goals was to establish a motive for Davis to "set up" the appellant. On cross-examination appellant did elicit from agent Jackson that Davis had been in-

dicted for the sale of narcotics. However, when he attempted to examine agent Jackson in greater detail about the present status of Davis's case, the court sustained an objection to his entire line of questioning.

At that point appellant made it clear by an offer of proof that he intended to explore with agent Jackson the incentive Davis might have had to cooperate with the government in the apprehension and conviction of other violators of the narcotics laws, as well as the existence of any promises or inducements made by the government to Davis in return for such cooperation. Appellant asserts that by sustaining the prosecution's objection to the offer of proof the trial court unduly restricted the proper scope of cross-examination. We agree.

■ In a criminal trial, the fact that a principal actor in the criminal transactions is awaiting trial or sentence on a narcotics charge is certainly relevant to a proper assessment of his credibility; the hope or promise of some reward in the way of immunity, preferential treatment or lighter sentence provides a possible motive both for entrapping the defendant and for testifying falsely at the trial. Accordingly, the defense should always have the opportunity to show by way of cross-examination or otherwise that the actions of a government informer may have been impelled by an expectation of leniency in his own pending prosecution or sentence. United States v. Hogan, 232 F.2d 905 (3rd Cir. 1956); United States v. Migliorino, 238 F.2d 7 (3rd Cir. 1956); Grant v. United States, 368 F.2d 658 (5th Cir. 1966).

■ Although the usual method of evincing such bias is through cross-examination of the informant himself, if the Court is adequately apprised of the relevancy of the proposed questions to the issue of entrapment (as it was in this case), the defense may also show the informant's incentive to "deliver" a subject for prosecution by cross-examination of the government agents who worked with the informant on the case.

Williamson v. United States, 262 F.2d 476 (9th Cir. 1959), cert. denied, 359 U.S. 971, 79 S.Ct. 885, 3 L.Ed.2d 837 (1959); United States v. Jones, 360 F.2d 92 (2d Cir. 1966), cert. denied, 385 U.S. 1012, 87 S.Ct. 721, 17 L.Ed.2d 549 (1967).

■ Respondent argues that even if error were committed in curtailing the cross-examination of agent Jackson it was cured by the subsequent examination of the informant himself. During that examination the informant stated that his case was in fact still pending before the Court and, although he hoped for the best, he had received no promise of favorable treatment as a result of his cooperation with the narcotics agents.

We do not think that this testimony was sufficient to cure the error. Davis was certainly not as reliable or objective a source of testimony regarding his motives for acting as an informer as was agent Jackson who was in a position to know what, if any, pressures were exerted upon Davis during the period of his cooperation before and after appellant's arrest. Furthermore, the conversations between Jackson and Davis might have cast some light on the degree of pressure, if any, Davis had exerted on appellant. United States v. Jones, supra at 96. In sum, testimony of agent Jackson may well have differed in substantial degree from the testimony given by Davis.

At the trial, defense counsel called a psychiatrist to testify with regard to appellant's mental capacity. This same psychiatrist had been appointed at an earlier date to determine appellant's competency to stand trial and the issue was determined in the affirmative by the trial court on the basis of the psychiatrist's report.

Although appellant did not intend to raise the defense of insanity, he did intend to prove by such psychiatric testimony that appellant's mental faculties were so deficient that he was incapable of forming the specific intent requisite to violate 21 U.S.C. § 174. In addition,

the defense hoped to establish by this witness that appellant was so susceptible of suggestion that a government informant, cooperating with the government in the hope of receiving favored treatment in his own narcotics prosecution, would have been able to manipulate the appellant and overcome his reasoning and willpower. The trial court, however, excluded the proposed testimony on the ground that it would be material only to a defense of insanity. Since we regard the psychiatric testimony as relevant to the issue of appellant's susceptibility to entrapment, we hold that the exclusion of that testimony was error.

We do not know exactly what the psychiatrist might have said if permitted to testify. Appellant, however, in his offer of proof, represented to the Court that the psychiatrist would state that defendant had impaired intelligence and judgment, suffered from brain damage, was alcohol motivated and was highly susceptible to suggestion.

Appellant contended that throughout his dealing with agent Jackson he acted solely pursuant to the instructions of the informant Davis. He testified that he drank four quarts of wine a day and had been arrested about 35 times for drunk and disorderly conduct. He stated that Davis was the man behind each of the sales and that he had assisted Davis in the hope of receiving enough money to purchase a bottle of wine. He also testified that he had never received anything from Davis for his part in the sales to agent Jackson.

"Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." Sorrells v. United States, 287 U.S. 435, 454, 53 S.Ct. 210, 217, 77 L.Ed. 413 (1932) (Mr. Justice Roberts concurring).

The determinative question is whether the necessary criminal intent originated with the government agent or with the accused; the purpose of the inquiry is to establish whether the officer merely furnished an opportunity for the commission of a crime already born in the mind of the accused or whether the officer implanted the seeds of the crime and seduced the accused to commit the alleged offense. Cross v. United States, 347 F.2d 327, 331 (8th Cir. 1965). See Ortega v. United States, 348 F.2d 874, 876 (9th Cir. 1965); United States v. Sherman, 200 F.2d 880, 882 (2d Cir. 1952).

Since the ultimate issue is appellant's claimed seduction and inducement to commit the offense, evidence of his predisposition, state of mind and criminal design is of great probative value and must be subjected to the most searching type of inquiry. See Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Only through such evidence can the jury fairly determine whether the government agent or informer has "play[ed] on the weaknesses of an innocent party and beguile[d] him into committing crimes which he otherwise would not have attempted". Sherman v. United States, 356 U.S. 369, 376, 78 S.Ct. 819, 822, 2 L.Ed.2d 848 (1958).

Admittedly, appellant's story is more than a little difficult to accept. But this very fact made the testimony of the psychiatrist all the more necessary since without it appellant had no means of convincing the jury that he was sufficiently pliable to be manipulated by Davis into committing the crimes. Certainly evidence that appellant was of below normal intelligence, was alcohol motivated, had severely impaired judgment and was highly susceptible to suggestion was relevant to assist the jury in determining whether appellant was "seduced" or "beguiled".

The trial court erred in excluding such evidence.

Appellant's final point is that the trial court's instruction on the issue of entrapment improperly assigned the burden of proof and therefore constitutes reversible error. Since the instruction given on this issue was identical with that

struck down by this court in Notaro v. United States, 363 F.2d 169 (9th Cir. 1966), both parties agree that the instruction is erroneous.

However, since defendant entered no objection to this instruction in the court below, he is faced with Rule 30 of the Federal Rules of Criminal Procedure which precludes him from raising the question on appeal in the absence of plain error under Rule 52(b).

In light of our disposition of the other matters on this appeal, it is unnecessary to decide whether the question of entrapment was so close that the giving of the *Notaro* instruction constituted plain error within the meaning of Rule 52(b). See generally Nordeste v. United States, 393 F.2d 335 (9th Cir. 1968), cert. denied, 393 U.S. 878, 89 S.Ct. 178, 21 L.Ed.2d 151 (1968); Carson v. United States, 310 F.2d 558, 561 (9th Cir. 1962); Cross v. United States, 347 F.2d 327, 330 (8th Cir. 1965).

The judgment is reversed.