UNITED STATES of America
v.
Ronnie Lee MURRAY et al.
Appeal of James Robert DIXON.
No. 17945.

United States Court of Appeals,
Third Circuit.

Argued April 7, 1971.

Decided July 28, 1971.

Joseph F. Walsh, Bracken & Walsh, Newark, N. J., for appellant.

Marc L. Dembling, Asst. U. S. Atty., Newark, N. J. (Herbert J. Stern, U. S. Atty., George J. Koelzer, Asst. U. S. Atty., Newark, N. J., on the brief), for appellee.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

**1172**

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Defendant James Robert Dixon appeals from an April 17, 1969, judgment and commitment entered after defendant was convicted by a jury on a charge of bank robbery[1] in the United States District Court for the District of New Jersey.

Two witnesses testified that a tall black man (subsequently identified as Murray) with a sawed-off shotgun entered a bank at Edison, New Jersey, on the morning of April 15, 1968, and ordered a teller to fill up a paper bag with United States currency. The drive-in teller of this bank testified that she saw both the tall black man (Murray) and a shorter black man wearing a shirt and dark pants in the parking lot prior to the robbery. The shorter black man remained in the parking lot during the robbery and the drive-in teller identified Dixon as the shorter black man in the parking lot "as well as I can recall" (N.T. 26).[2] After the money had been taken from the bank, this witness saw "the two men out in the parking lot again" (N.T. 18). Police Officer Barrett received a report that a 1968 Green Pontiac was the robbery car and stopped such a car about nine minutes later. Defendants Murray, Dixon and Hart were in the car with Brenda Eagle (Murray's girl-friend), as well as a paper bag with over $26,000 in currency and a sawed-off shotgun, etc. Additional police officers arrived and the occupants of the car were arrested. Pictures of the personal property inside the car were taken promptly and received in evidence.

Murray, for two months after his arrest, adhered to the position that he was the only person involved in the bank robbery (N.T. 104, 106, 109–12, 114, 116, 118, 149; Exhibits D–1, D–2). He changed his story after he was indicted (N.T. 188). Likewise, Mrs. Eagle, for one month after her arrest, adhered to the position that she was asleep in the car and was unaware that a bank robbery was even contemplated, and certainly unaware that it had been perpetrated, until after the occupants of the car were apprehended by the authorities. (Exhibits D–4, D–5, D–6; N.T. 240–41, 252–59, 265–66, 274).

In May 1968, and thereafter, Murray stated to FBI representatives that appellant acted as a lookout in the parking lot and that he transported the paper bag containing the money from the parking lot to the place where the Green Pontiac was parked during the robbery.

Defendant contends that his conviction should be reversed and that he should be granted a new trial because the trial judge improperly restricted defense counsel's cross-examination of two key prosecution witnesses. Specifically, defendant contends that the trial judge committed reversible error when he refused to permit defense counsel to cross-ex-

---

1. The jury found defendant guilty of the violation of 18 U.S.C. § 2113(b) (1964) and 18 U.S.C. § 2 (1964) charged by Count I of the indictment, guilty of the violation of 18 U.S.C. § 2113(a) (1964) and 18 U.S.C. § 2 (1964) charged by Count II of the indictment, and not guilty of the violation of 18 U.S.C. § 2113(d) (1964) and 18 U.S.C. § 2 (1964) charged by Count III of the indictment.

2. This witness did not see the gun when she observed the two black men in the parking lot (N.T. 18), but when she saw the taller black man at the teller's window in the bank, she saw a gun "sticking up over the counter" (N.T. 18). Also, the taller black man did not have a coat on in the parking lot (N.T. 17), whereas the teller who was ordered to fill the bag with money testified that this taller man was wearing a light color beige trench coat (N.T. 6). This testimony is consistent with a jury finding that the gun may have been concealed in the trench coat until Murray entered the bank and with the jury's verdict that appellant was not guilty of Count III, charging the three co-defendants with putting the lives of the bank employees in jeopardy by the use of a dangerous weapon. The co-defendant Hart (driver of the car), tried with appellant, was also found not guilty under Count III. The trench coat was used to cover the gun on the floor of the Green Pontiac when police officer Barrett stopped it nine minutes after the bank robbery (N.T. 34).

amine two key prosecution witnesses on whether their testimony was given in return for an agreement by the Government not to prosecute Brenda Mary Eagle on charges of aiding and abetting the bank robbery and harboring a fugitive. The first defense contention arises in the context of the testimony of Ronnie Lee Murray. Murray, a co-defendant, had entered a plea of guilty, and had testified that he had entered the bank and perpetrated the robbery, while defendant Dixon stayed outside the bank serving as a lookout (N.T. 8). Murray testified on cross-examination that he was in love with Brenda Mary Eagle, who had accompanied the defendants on their trip from Newark, New Jersey, to the bank that was robbed in Edison Township, New Jersey (N.T. 160, 169). The record reveals that the following then occurred:

"[Defense Counsel]: May I make my offer of proof? My offer of proof is that on April 16, 1968, the day after the alleged crime, that a commissioner's complaint was filed by the United States of America against Brenda Mary Eagle, Robert James Dixon and Jaddie Hart, and I want to show the jury that whereas originally Brenda Mary Eagle was part of this case when the complaint was filed against her growing out of this series of events, she is no longer part of this case, to allow the jury to infer that some sort of indication has been given to this witness that if he would cooperate— and let them decide whether this cooperation includes lying, the jury— that they would go easy on Brenda and not indict her.

"[Assistant U. S. Attorney]: Is this the complaint you are referring to?

"[Defense Counsel]: Yes.

"[Assistant U. S. Attorney]: We don't have it marked yet, but, your Honor, could we agree that the complaint charges a violation of Sections 3 and 1072? 3 is an accessory after the fact. Section 1072 charges harboring of Federal fugitives. These charges are not on trial before this Court. In effect this complaint charges Mr. Dixon and Mr. Hart with other crimes with which we are not now concerned. I think we run a risk to [defense counsels'] clients if these facts are brought out. I don't believe it is material as to the bank robbery charge.

"I submit that harboring a fugitive is utterly unrelated to the bank robbery.

"[Defense Counsel]: Brenda Eagle was charged with a crime growing out of a series of events. She is indicted in that complaint of a crime, and I would like the jury to know the sequence, namely, at one time she was charged in this case, and now she isn't.

"In the meantime, she has cooperated with the authorities.

"[Assistant U. S. Attorney]: He knows she is not charged in this case, she never was.

"[Defense Counsel]: The sequence of events of this case.

"[Assistant U. S. Attorney]: She has never been charged in this case. * * *

* * * * * *

"THE COURT: I will not permit it. Denied." (N.T. 177–79)

The second defense contention arises in the context of the testimony of Brenda Mary Eagle, who also testified against defendant Dixon. The record reveals the following:

"THE COURT: I will hear your proffer as to DD–1.

"[Defense Counsel]: It is this, your Honor: I would like to show through this witness that at one time she was the recipient of a complaint for violation of USC Title, whatever it is, Section 3 and 1072.

"[Assistant U. S. Attorney]: Keep your voice down so the jury can't hear you.

"[Defense Counsel]: And that subsequently so far as I know from my investigation the complaint was dropped, and I would like to give facts of

the evidence from which I might adduce that in return for dropping the complaint she agreed to cooperate with the Government on the credibility question.

"[Assistant U. S. Attorney]: I don't believe that that's material. It is trying to show that she was at one time charged with another crime of which she was never convicted. The potentiality of prejudice to the Government far outweighs any advantage to the defendants. There has already been testimony by the Edison Police, and indeed, by Murray and her, that she was arrested. I believe that's sufficiently before the jury. It is obvious there has already been testimony in this case that she has not been charged with this bank robbery. [Defense counsel's] purpose can be served by those two facts which are already in evidence. The potential prejudice to the Government far outweighs whatever he seeks to prove.

"[Defense Counsel]: I want to show two charges have been dropped against her, namely, bank robbery, and secondly, harboring a criminal.

"[Assistant U. S. Attorney]: There has been no testimony that she has ever been charged with bank robbery.

"[Defense Counsel]: Fine, I will take that.

"[Assistant U. S. Attorney]: In this case. I think further that it is not within the province of [defense counsel] to show whether or not she should have been or ought to have been charged.

"[Defense Counsel]: It is for the jury.

"[Assistant U. S. Attorney]: No. This is beyond the scope. There has been testimony that she had not been indicted. We are talking about indictments and convictions. There has been testimony that she has not been indicted, and that's as far as it can go.

"THE COURT: I will not permit it. Exception noted." (N.T. 342–44)

This court in United States v. Migliorino, 238 F.2d 7 (3rd Cir. 1956), stated the rule applicable in this Circuit:

"It is always available to the defense to show by cross-examination that the testimony of a government witness was given in return for a promise of lighter sentence or other preferential treatment. We decided in United States v. Hogan, 3 Cir., 1956, 232 F.2d 905, that this right of the defendant is so valuable that a denial of it constitutes reversible error and an abuse of the trial court's discretion in the limitation of cross-examination. See also Gordon v. United States, 1953, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447." 238 F.2d at 10–11.

*See also* Hughes v. United States, 427 F. 2d 66, 68 (9th Cir. 1970); United States v. Dickens, 417 F.2d 958, 961 (8th Cir. 1969). The excluded questions were evidently aimed at impeaching the credibility of Ronnie Lee Murray and Brenda Mary Eagle by eliciting direct testimony, or other evidence from which it could be inferred, that their testimony was impelled by the hope that the Government would not prosecute Brenda Mary Eagle on charges of aiding and abetting the bank robbery and harboring a federal fugitive.[3] The record demonstrates that counsel for defendant Dixon was permitted to cross-examine Mrs. Eagle, and counsel for co-defendant Hart was permitted to cross-examine both Murray and Mrs. Eagle, on whether their testimony was given in return for promises of lighter sentences on other charges of bank robbery, arising from an earlier

---

3. The Assistant United States Attorney conceded that Mrs. Eagle was at one time charged with harboring a federal fugitive (N.T. 177–78, 342–43). While the record shows that Murray was a fugitive (N.T. 94), it is not entirely clear that Murray was the fugitive Mrs. Eagle was charged with harboring. There are, however, strong indications in the record that such was the case. (Exhibits D–4, D–6; N.T. 178, 184).

bank robbery, to which charges Murray and Mrs. Eagle had entered pleas of guilty (N.T. 134, 282, 346). Also, counsel for defendant Dixon was permitted to cross-examine Murray on his hope for leniency in all pending and potential criminal prosecutions as his dominant reason for testifying.[4] However, the district court refused to permit cross-examination on whether the testimony of Murray and Mrs. Eagle was given in return for preferential treatment of Mrs. Eagle in connection with the Edison Township bank robbery. Although such cross-examination was part of a separate and independent basis for attacking the witnesses' credibility,[5] it would have been cumulative insofar as it was a basis for finding that these witnesses had an additional interest in favoring the prosecution.[6] Brenda Eagle conceded that she was awaiting sentence on a bank robbery charge and that she would like to get as light a sentence as possible. See United States v. Migliorino, 238 F.2d 7, 11 (3rd Cir. 1956). There was extensive cross-examination of these witnesses (N.T. 99–196 of Murray and N.T. 255–283 and 323–346 of Eagle).

During his summation to the jury, counsel for Dixon was permitted to refer to other crimes and the motivation ("hope for leniency") of Murray and Eagle insofar as they affected their credibility (N.T. 24–25 of transcript of 2/24/69). This was the principal argument of such counsel (N.T. 24–32 of 2/24/69 transcript), during which this language, inter alia, was used at N.T. 29–31:

"So he made a trade-off. He said in effect—Ask yourselves this—give me something, give my girl friend something, and I will give you two things: I will give you Dixon and Hart.

\* \* \* \* \* \*

"Don't be; don't be sold by it. Instead, there is a basis here for truth, and it is in Mr. Murray's original statement right after the events when he was asked what happened. And he explained that it was his idea—and why not? He is a professional bank robber \* \* \*

\* \* \* \* \* \*

" \* \* \* [A]fter he was indicted on May 31, 1968, after Ronnie Lee Murray was indicted, then, coward that he is, liar that he is, professional criminal that he is, he comes in and says, 'Save me. Save Brenda, and I will give you Dixon and Hart.'

"So says he in June, and you will see these statements: 'Don't believe what I said originally, now I am going to deliver up Hart and Dixon to you, leave me alone, leave my girl friend alone, let us out on the street soon.'

" \* \* \* And he got his payoff, he got his payoff, because in a three-count indictment against him he is permitted to plead guilty to one count many, many months ago.

"He is still not sentenced. And most significantly, most significantly, Brenda wasn't indicted."

After charging that the jury must consider the "witness' relationship to the Government or to the defendant" and "the witness' interest, if any, in the outcome of the case" (N.T. 104) in evaluating credibility of the witnesses and the weight to be given to their testimony, the trial judge charged at N.T. 111–113:

---

4. For example, Murray testified at N.T. 131 that he had said to counsel for Hart that he was going to testify because "I don't want to mess around and get ninety years."

5. The credibility of these two witnesses was an issue of major importance to the defense. As we have noted, they were the Government's key witnesses and their testimony at trial was quite the reverse of the version of the facts that they originally gave in statements to the Federal Bureau of Investigation.

6. This court said in United States v. Stoehr, 196 F.2d 276, 281 (3rd Cir.), cert. denied, 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643 (1952):

"The exclusion of questions which have at most a slight bearing on bias and credibility does not constitute reversible error."

"I charge you as a matter of law that accomplices that are tainted with confessed criminality are often influenced in their testimony by a strong motive of hope of favor or of pardon, and, therefore, it is incumbent upon the jury to look carefully into the secret motive that might actuate bad minds to draw in and victimize the innocent.

" * * * [T]he question for you ladies and gentlemen to decide in this case is—and I call it the threshold question—whether or not Dixon, Hart or both of them participated in that robbery.

\* \* \* \* \* \*

"I further charge you that the testimony of any witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused should always be considered with caution and weighed with great care.

"Again, members of the jury, you as jurors are the sole judges of the credibility of the witnesses and the weight that their testimony deserves.[7] You should carefully scrutinize the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind and demeanor and manner while on the stand. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; * * * "

For the foregoing reasons, we have concluded that there was no reversible error in the alleged improper limitation of cross-examination of Murray and Eagle. See Davis v. United States, 133 U.S.App.D.C. 172, 409 F.2d 453 (1969); cf. United States v. Greenberg, 419 F.2d 808, 809 (3rd Cir. 1969).

Further, defendant Dixon complains of alleged derogatory remarks of the Assistant United States Attorney concerning his trial counsel. During his summation, the Assistant United States Attorney apologized to counsel for the defendants "for anything that I might have said or done that was improper" during a trial which had been "heated at times" (N.T. 52–53). The trial judge charged the jury (N.T. 102):

" * * * [Y]ou have heard statements made by counsel during the trial. Some of these remarks were made spontaneously in the fervor of the trial. You are not to consider these at all in your deliberations, nor are you to draw any inferences for or against the government or for or against the defendants because of these remarks.

\* \* \* \* \* \*

"Thus, I again instruct you as I did during this trial to entirely disregard the prosecutor's comments during the defendants' counsel's cross-examination of Brenda Eagle."

While we do not condone the prosecutor's remarks, the trial judge was careful to leave the issues of credibility and fact to the jury (see footnote 7) and, after a careful review of the record, we have concluded that the defendant received a fair, though hard fought, trial. See United States v. Laurelli, 293 F.2d 830 (3rd Cir. 1961); United States v. Kafes, 214 F.2d 887, 888–889 (3rd Cir.), cert. denied 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954); cf. United States v. Stayback, 212 F.2d 313 (3rd Cir. 1954); United States v. Katz, 173 F.2d 116 (3rd Cir. 1949).

Also, after careful consideration of the record in this case, we have concluded that any trial error in this case in the two matters relied on by appellant was "harmless beyond a reasonable doubt." Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284

7. The trial judge carefully and repeatedly emphasized in his charge that the jury was to decide all questions of credibility

(N.T. 96–97, 103–105 & 109 of 2/24/69 transcript).

(1969); Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

We note that defendant-appellant's brief was filed on October 13, 1969, and that the Government's brief was filed on February 17, 1971, some 16 months later. We feel compelled to re-emphasize that there is a strong federal court policy favoring the prompt disposition of federal criminal cases. *See* Resolution of the Judicial Conference of the United States, Report of the Proceedings of the Judicial Conference of the United States 62 (Oct. 31–Nov. 1, 1969); Resolution of the Judicial Conference of the United States, Report of the Proceedings of the Judicial Conference of the United States 15 (March 16–17, 1970); *cf.* United States ex rel. Boyd v. Rundle, 437 F.2d 405, 406 (3rd Cir. 1970); Brown v. Brierley, 438 F.2d 954 (3rd Cir. 1971), at note 1.

The April 17, 1969, judgment and commitment will be affirmed.