## MINNELLA et al. v. UNITED STATES.
### No. 8510.

Circuit Court of Appeals, Eighth Circuit.
Sept. 30, 1930.

J. E. Carroll, of St. Louis, Mo., for appellant Rosario Minnella.

Verne Lacy, of St. Louis, Mo., for appellant Fedele Minnella.

George C. Dyer, Asst. U. S. Atty., of St. Louis, Mo. (Louis H. Breuer, U. S. Atty., of Rolla, Mo., and Claude M. Crooks, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and OTIS, District Judge.

STONE, Circuit Judge.

This was an indictment, in five counts, against the two above appellants and others in connection with counterfeiting. Counts 1 and 2 were for possession of plates in similitude of those used to print gold certificates of $20 and $100, respectively. Counts 3 and 4 were for possession of forged certificates. Count 5 was for a conspiracy to violate the counterfeiting laws. Counts 3 and 4 were withdrawn from the jury. As to these two appellants, the case was submitted on the remaining three counts. There was a conviction upon all three and concurrent sentences of six years on each count. Since submission of this appeal, the appeal of Fedele Minnella has been dismissed upon suggestion of death.

Four matters are argued here in connection with the appeal of Rosario Minnella.

### I. Indictment.

The indictment is attacked through a special demurrer, and several grounds are alleged which differ in accordance with the character of the count.

The objection to counts 1 and 2 is that they are vague, indefinite, and uncertain, in that they do not state (a) the place where the plates were possessed; (b) the kind of certificates, that is, whether they were for coin or bullion; or (c) the series. It is settled in this circuit now that a statement that they were possessed "in the City of St. Louis, Missouri," is proof against demurrer, although it may or may not be subject to a bill of particulars. Myers v. United States (C. C. A.) 15 F.(2d) 977. The same reasoning applies to the two other objections.

As the sentences were concurrent and the indictment is good as to counts 1 and 2, the objection to the fifth, or conspiracy, count is not necessary to be determined.

### II. Expert Qualifications.

The second matter urged is as to the qualifications of two witnesses who undertook to say that the plates possessed were in similitude of those used by the government. These two witnesses were secret service men of the Treasury Department, both of whom had seen plates of this character in the Bureau of Printing and Engraving and had made casual or slightly more than casual examination of such plates. One of them stated: "I have made no critical study. I have noticed them enough to know a genuine bill or a genuine plate from counterfeit maybe something like that." These plates were introduced and were before the jury. They may or may not have been exact copies of the real plates, but ordinary men could examine them and determine whether bills print-

 

ed therefrom would or would not resemble genuine bills, and that is really the test of similitude. Exact reproduction is not necessary. Besides this, the witness Mays testified in detail as to exactly how these plates were made. They were made from photographs of genuine bills, and this testimony alone was amply sufficient to have carried the case to the jury if the two government agents had not testified at all. Their testimony was, at most, merely cumulative in effect. The purpose of the statute was solely to prevent counterfeiting, and any plates made from photographs of genuine bills are in such similitude as to come within the prohibition of the statute.

### III. Sufficiency of Evidence.

■ The third matter argued is as to the sufficiency of the evidence. There can be no doubt of this sufficiency as to Fedele Minnella. These plates were in his house with his knowledge and consent, and there they were made and printing of several hundred bills made therefrom; in all of this he actively participated. As to Rosario, the evidence is also clear. He helped bleach the $1 bills used in the printing. He paid Mays for his services in making the plates. He participated in the conversations with Mays regarding taking the outfit to Jonesboro and continuing with the printing. He was an active participant in the entire matter, and the acts of physical possession of Mays and Fedele were the possession of all who were in this common undertaking.

### IV. Charge.

■ Objection is made to the definition of "similitude." We think the charge was correct. It stated that the test was that the plate must be one "from which it is possible to print, or which is capable of printing a $20 gold certificate in the similitude or likeness of a genuine $20 gold certificate of the United States, * * *" and that such similitude existed if "it is calculated to deceive an honest, sensible and unsuspecting man of ordinary observation and care in his dealings with the ordinary citizen with whom he has transactions." This is certainly sufficient under the statute if the statute is to have any practical meaning or effect. Any other construction would mean that, unless a counterfeit was perfect, it would not be in similitude. Of course, the government has taken all the steps which ingenuity and experience could suggest to make it impossible or difficult to exactly simulate its printed money. It is not to be expected that counterfeiters can do their

work so perfectly as the government, nor are they required so to do to be punishable under these statutes.

### Conclusion.

The judgment should be and is affirmed.