## TOUHY v. UNITED STATES.
### No. 10641.

Circuit Court of Appeals, Eighth Circuit.

March 9, 1937.

Joseph R. Roach, of Chicago, Ill. (Robert V. Rensch, of St. Paul, Minn., on the brief), for appellant.

George F. Sullivan, U. S. Atty., of St. Paul, Minn.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellant was indicted jointly with seven others in twelve counts, for robbing the United States mail; for the stealing of nine different letters from such mail; and for conspiracy to violate the provisions of sections 317 and 320 of title 18, U.S.C. (18 U.S.C.A. §§ 317, 320).

Some two years prior to appellant's trial, McKee and Ryan, jointly indicted with appellant, pleaded guilty and were at the time of the trial confined in a penitentiary. Just prior to the trial Barry and Epmeier, also jointly indicted, pleaded guilty and testified for the government.

Prior to the commencement of the trial, counts 1 and 2 were dismissed by the government, without objection on the part of appellant. These two counts were drawn under section 320, supra, which defines and denounces as a crime, robbery of the United States mail by putting the custodians thereof in jeopardy, by the use of dangerous weapons. Thereafter the trial proceeded, with the result that appellant was convicted on the conspiracy count, and on each of the nine counts for the theft of nine letters from the mail, as charged in counts 3 to 9, inclusive. His punishment was fixed at imprisonment in a penitentiary for twenty-three years in the aggregate, all terms to run consecutively. From this sentence and judgment appellant has appealed in due form.

Appellant urges as error for which he contends the case should be reversed: (1) That the trial court erred in overruling appellant's demurrer to the indictment. (2) That it was error to permit the attorney for the government to dismiss counts 1 and 2 of the indictment, because other counts of the indictment, particularly count 12, referred to counts 1 and 2, thus making reference counts of the latter, and a dismissal of them destroyed them as reference counts, and so all of the remaining counts became inadequate to charge any offense, and that what was done was tantamount to amending all remaining counts, particularly count 12 (the conspiracy count). (3) That the trial court erred in admitting incompetent and immaterial evidence offered by the government, and in refusing to admit competent evidence proffered by appellant, namely, (a) in permitting the photograph of one Gus Schaeffer, who was indicted jointly with appellant as a participant in the larceny charged, and that of the wife of the latter, to be offered and shown to the jury; (b) that appellant was not permitted to ask the witness Epmeier, a participant in the larceny who testified for the government, what his purpose was in testifying for the government; (c) in not permitting the witness Barry, likewise a participant in the larceny, and who testified for the government, to state whether he had had any discussion with two post office inspectors, as to any other matter for which the witness might be indicted; (d) that it was error to permit one Skoog, the chief of police of Arlington Heights, to testify that he had said in the presence of appellant, to one Roger Touhy, brother of appellant, "to get his gang out of Arlington Heights"; (e) that the court erred in allowing a daughter of appellant (who testified that appellant was at home in Arlington Heights, where he and she lived, on January 3, 1933, the night of the larceny at Minneapolis, and on January 6, 1934, the night of an alleged meeting of the thieves at another house) to be questioned by the government on cross-examination, as to the various places at which she had lived and the different names under which she had been known; and (4) that the court in his charge to the jury gave too much emphasis to the testimony of Epmeier and Barry, alleged accomplices of appellant, and commented thereon unfairly.

It is too clear for argument to the contrary, that the demurrer of appellant to each of the twelve counts of the indictment was properly overruled by the trial court. The contention of appellant to the contrary, and his insistence on error, appear to be bottomed on two propositions of law, both of which are incorrect. First, he insists that the indictment fails to set out definitely when and where the several larcenies from the mails of the several registered letters alleged to have been stolen therefrom occurred. But the indictment, in counts 1 and 2 thereof, clearly alleges as to time that

the letters in question were stolen from the United States mail on January 3, 1933, and as to the places of said larcenies, the indictment charges that each of them occurred "at the Chicago, Milwaukee, St. Paul and Pacific Railway Station in the City of Minneapolis, County of Hennepin, State and District of Minnesota." Second, that the dismissal of count 1 took it physically out of the case and destroyed it as a reference count.

■ The letters are described, by registry numbers, by destinations, by senders and addressees, and the mail pouches from which the letters were abstracted are severally described by the initials and numbers of the rotary locks with which such pouches were closed and locked. It is true that except in counts 1 and 2 of the indictment, the railway station as the situs of the larcenies is not specifically alleged. Nor was this necessary; nor was the indictment bad on demurrer because of a failure to again allege the precise place in Hennepin county whereat the crimes were committed. The venue was correctly alleged and if appellant desired clearer, more certain, and more definite particulars as to the exact place, he could have asked, as he did not ask, for these in a motion for a bill of particulars. We are not saying that the situation required that a bill of particulars be furnished appellant, even if he had demanded it. But we are saying that, venue of a crime having been correctly stated in an indictment, the failure to allege the precise point in such venue whereat the crime charged was committed, is no longer, in this circuit at least, a proper ground for demurring to the indictment; but is to be remedied, in a proper case, by a bill of particulars. See Minnella v. United States (C.C.A.8) 44 F.(2d) 48; O'Neill v. United States (C.C. A.8) 19 F.(2d) 322; Gurera v: United States (C.C.A.8) 40 F.(2d) 338; Myers v. United States (C.C.A.) 15 F.(2d) 977. In the case of Minnella v. United States, supra, 44 F.(2d) at page 48, this court said: "The indictment is attacked through a special demurrer, and several grounds are alleged which differ in accordance with the character of the count. The objection to counts 1 and 2 is that they are vague, indefinite, and uncertain, in that they do not state (a) the place where the plates were possessed; (b) the kind of certificates, that is, whether they were for coin or bullion; or (c) the series. It is settled in this circuit now that a statement that they were possessed 'in the City of St. Louis, Mis-

souri,' is proof against demurrer, although it may or may not be subject to a bill of particulars. Myers v. U. S. (C.C.A.8) 15 F.(2d) 977."

It is true that in the case of Lynch v. United States (C.C.A.8) 10 F.(2d) 947, and in one or two others in this circuit which followed the Lynch Case, the unnecessary and careless failure of the pleader to allege the precise and known place whereat on offense was committed was, in effect, magnified into a demurrable defect in alleging venue and held fatal to the goodness of an indictment. But this view is no longer taken in this circuit, but has become outmoded, at least ever since the case of Myers v. United States (C.C.A.) 15 F.(2d) 977, was ruled.

■ Another reason why appellant's contention that counts 3 to 12, both inclusive, are demurrable, should not be sustained, is that each of these counts refers for further and omitted allegations to count one of the indictment, thus making the latter a reference count; so that allegations in this first count are, by proper reference thereto, made to supply inadequacy of paper allegations in succeeding counts. This has long been held to be proper and permissible. See Crain v. United States, 162 U.S. 625, 633, 16 S.Ct. 952, 40 L.Ed. 1097; Blitz v. United States, 153 U.S. 308, 317, 14 S.Ct. 924, 38 L.Ed. 725; Foster v. United States (C.C.A.) 178 F. 165; Browne v. United States (C.C.A.) 145 F. 1; Glass v. United States (C.C.A.) 222 F. 773, 780; Linn v. United States (C.C.A.) 234 F. 543, 545; Wheeler v. United States (C.C.A.) 77 F. (2d) 216, 218; Chew v. United States (C. C.A.) 9 F.(2d) 348, 353; Barnard v. United States (C.C.A.) 16 F.(2d) 451, 453; Nichols v. United States (C.C.A.) 48 F. (2d) 46; McClintock v. United States (C. C.A.) 60 F.(2d) 839. While in the case at bar, as said already, the reference count here (count 1), as also was count 2, was before trial voluntarily dismissed, such dismissal merely affected further prosecution under it, but it did not have the further effect to so far remove it from the paper pleading as to forbid, or preclude further use of it as a reference count. After dismissal of further prosecution under it, reference to it and to its language, were still legally available to eke out inadequacy of allegations in other counts of the indictment remaining, when such counts, as they did here, made apt reference to such dismissed count. In short, the dismissal of count one affected prosecution under and

on it, not at all the language in it. Crain v. United States, supra; Blitz v. United States supra; Wheeler v. United States (C. C.A.) 77 F.(2d) 216, 218.

What is said above disposes also of appellant's contention that the trial court committed error in permitting counsel for the government to dismiss counts 1 and 2. It is not contended that the dismissal, standing alone, could upon any reasonable or tenable theory constitute error for which a reversal would be called for. Such a contention, of course, would not rise to the stature of even respectable nonsense, even if appellant had, as he did not, objected to such dismissal. But the contention is that such dismissal rendered all remaining counts in the indictment bad for insufficient averment. As said already, the authorities, and indeed the reason of the thing, fail to sustain the contention.

The contention of appellant that the court fell into error in permitting the government to offer the photograph of Gus Schaeffer, a codefendant and proven participant in the larcenies, as also the photograph of Ida Schaeffer, wife of the said Gus, must be disallowed; for while we examine the record in vain to find any reason or necessity for the admission of these photographs, necessity for an examination of the point on its merits is obviated by a stipulation, pursuant to which the objection theretofore voiced by appellant through his counsel was withdrawn. Rocchia v. United States (C.C.A.) 78 F.(2d) 966.

We find no error in the refusal of the court to allow Epmeier, who had "turned State's evidence," to answer on cross-examination, "what his (the witness') purpose was in testifying for the government." It is plain that the question was unhappily framed and that technically it called for a conclusion; yet we think the refusal by the court to allow it to be answered would have been error, but for the fact that this witness had already been cross-examined at great and excessive length as to what promises of benefit or immunity if any, had been made to him for pleading guilty and testifying for the government, and he had already said that while no such promises had been made, he "hoped, but did not expect," the court would take the matter of his testifying for the government into favorable consideration. We think in this situation the point made is ruled by what this court said in the case of Hartzell v. United States (C.C.A.) 72 F.

(2d) 569, 585, thus: "A defendant is entitled as a matter of right to have an opportunity of fairly and fully cross-examining the witnesses appearing against him. A denial of this right is usually prejudicial error. It is only after the right of cross-examination has been substantially and thoroughly exercised that the allowance of further cross-examination becomes discretionary with the trial court. Heard v. United States (C.C.A.8) 255 F. 829; Cossack v. United States (C.C.A.9) 63 F.(2d) 511; Minner v. United States (C.C.A.10) 57 F.(2d) 506; Galindez v. United States (C.C.A.1) 19 F.(2d) 352."

A similar contention is urged, that the trial court unduly curtailed and restricted the cross-examination of the witness Barry, a participant in the crimes charged, and who likewise testified for the government. In addition to his cross-examination exhaustively as to promises of lenity or immunity, Barry was asked as to an alleged conversation he had had with two post office inspectors, whether "there was any discussion of any other case under which you (the witness) might be indicted by the United States"? To this question an objection by the government was sustained, and this is urged as error. What has been said already largely applies to this contention. Besides, no offer of proof was made by appellant, so we do not know whether if the witness had been permitted to answer, such answer would have been of any help to appellant [Flowers v. United States (C.C.A.) 83 F.(2d) 78, 81]; nor can we take judicial notice that a post office inspector has any authority by law either to mete out punishment, or to grant immunity to criminals.

In the course of the trial, one Skoog, the chief of police of Arlington Heights, testifying for the government said that he and others were at a house in Arlington Heights on the night of January 6, 1933; that he saw appellant, his brother Roger Touhy, and the witness Hendrickson, and others whom he did not know, some ten or eleven persons in all, present there; and that he told Roger Touhy, in the presence of appellant, "that Arlington Heights was no place for them; to get out and clean his gang up."

The appellant insists that it was error to admit this statement of Skoog, for that it was, in effect, a statement that appellant was guilty of other crimes and was a racketeer.

We think this construction, as urged, is a strained one, even if the language used by the chief of police had been addressed to appellant, as it was not. Roger Touhy, the brother of appellant, was neither a party to this record, nor was he a witness in this case. If he had a gang, or was a racketeer, the record is silent as to both facts. True, this witness stated in an answer, not responsive to any question, that the Touhys were in the brewery business; but this answer was stricken out at the request of the appellant. While the situation shown clearly exhibits an excess of zeal on the part of counsel for the government, and a too great readiness on the part of the witness to volunteer ostensible information, we are of opinion that a mere statement to a kinsman of appellant about the business and associates of such kinsman, though made in the presence of appellant, does not constitute reversible error, in a case as here where appellant himself was not definitely referred to. Of course, proof of other offenses, in a case such as the instant one, was not relevant to any issue before the jury. There are exceptions, but this case is not among them. But we think what occurred here fell far short of a statement that appellant was or had been guilty of other crimes. The contention is farfetched and hypercritical and is disallowed.

As indicated already, it is complained of as error that counsel for the government was permitted to cross-examine a Mrs. Ryan, a daughter of appellant, and her husband (who testified for appellant) as to where they lived, and as to various places at which they had lived, and as to various different names by which they had called themselves. In the light of the rule laid down by the Supreme Court in the case of Alford v. United States, 282 U.S. 687, 691, 51 S.Ct. 218, 219, 75 L.Ed. 624, we are of opinion that no error was committed in allowing the cross-examination here complained of. Among other things squarely apposite to the above contention and the view we express about it, the Supreme Court, in the Alford Case, supra, 282 U.S. 687, at page 694, 51 S.Ct. 218, 220, 75 L. Ed. 624, laid down the general rule governing a phase of cross-examination thus: "The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." We are of opinion the trial court did not on the point abuse sound discretion.

Appellant excepted to that part of the charge of the court wherein the jury were told that the fact that some of the letters taken from the mail were in a mail pouch within another mail pouch was immaterial. And of course it was. Exception was taken to that part of the charge of the court in which he said to the jury that if appellant "aided, assisted, or abetted in the theft of these registered letters, as set forth in the indictment, then he is guilty of the crime with which he is charged." This exception was based, not on any such ground as that the court omitted to say "if Touhy was present and wilfully aided," and so forth, but upon the sole ground that appellant, if guilty at all, was a principal in the commission of the larcenies, and not an aider and abettor. There is obviously no virtue in such an exception. The evidence disclosed that appellant was near the place when and where the mail pouches were stolen; but that he did not physically take them, nor touch them as they were being taken; he stood near with a machine gun, and acted as a lookout, while others took them. It is true that the statute makes appellant a principal for all the purposes of an indictment, trial, and punishment (section 550, title 18 U.S.C. [18 U.S.C.A. § 550]) even though his acts might at common law merely have constituted him an aider and abettor. No hurt could possibly have come to him because the court told a jury of laymen, in effect, that if he aided and abetted the larcenies, then he was just as guilty as he would have been if he had physically and personally stolen the letters. Such is the legal fact, and it was not error to say so to the jury.

The charge as a whole was fair to the appellant. We have read it with care and can find no error in it. The comments of the court on the evidence are fair and well-balanced as between appellant and appellee, and are well within limits fixed by cases too numerous to mention or cite.

We are convinced that the proof of appellant's guilt was ample to warrant the conclusion as to the fact, reached by the jury, and that it should be affirmed, which accordingly is ordered.