Delbert Lester **KIRSCHBAUM, Sr.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 19254.

United States Court of Appeals
Eighth Circuit.

March 6, 1969.

Don J. Wilson, West Des Moines, Iowa,
for appellant.

Claude H. Freeman, Asst. U. S. Atty., Des Moines, Iowa, for appellee, James P. Rielly, U. S. Atty., Jerry E. Williams, Asst. U. S. Atty., Des Moines, Iowa, on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

Delbert Lester Kirschbaum, Sr., the defendant, was convicted by trial to a jury upon each count of a two-count indictment which charged the interstate transportation of "lewd, lascivious and filthy films" for the purpose of sale and distribution in violation of 18 U.S.C. § 1465, and which charged in the second count a conspiracy to commit the substantive act in violation of 18 U.S.C. § 371. The trial court sentenced defendant upon each count to a term of three years, the sentences to run concurrently, and upon condition that defendant be confined in a jail type or treatment institution for a period of sixty days with the remainder of the sentence suspended and probation allowed for two years and ten months as authorized by 18 U.S.C. § 3651.

The issues here involve the sufficiency of the evidence and evidentiary rulings of the trial court. We affirm the judgment of conviction.

■ Defendant first challenges the sufficiency of the Government's evidence to support the verdict. The legal character of the film and its sale in Des Moines, Iowa are not disputed. Resolution of this issue therefore centers on the evidence as it pertains to the interstate transportation aspect. It is undisputed that Andrew Persich, the manufacturer or distributor of the films, lived in Peoria, Illinois, and that defendant lived in Des Moines, Iowa. Defendant did not testify or offer any evidence in his behalf. At the conclusion of the Government's case, defendant made a motion for acquittal and thereafter moved for a judgment n. o. v. It is settled law that in resolving the question of submissibility to the jury, "the District Court must, as do we, in passing on this issue, view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government." Moore v. United States, 375 F.2d 877, 879 (8th Cir. 1967), *cert. denied*, 389 U.S. 844, 88 S.Ct. 92, 19 L.Ed. 2d 110 (1967); Coon v. United States, 360 F.2d 550, 552 (8th Cir. 1966), *cert. denied*, 385 U.S. 873, 87 S.Ct. 145, 17 L. Ed.2d 100 (1966).

Sufficient evidence was presented by the Government through the testimony of witnesses Gerald M. Sloan, Dewey Beaver and Waldo W. Lynch for the district court to submit the case to the jury.

Gerald M. Sloan, a Government witness who admitted that he had previously been engaged in the sale of "stag movies," testified that he sold defendant such films in January or February of 1964; that Ernie Curtis and Andrew Persich, both of Peoria, Illinois, were distributors of films; that he and defendant agreed to buy the films in Peoria, bring them back to Des Moines, Iowa, and sell them; that defendant gave Sloan $300.00 and a bus ticket for the purpose of making the trip to Peoria to purchase the films; that he backed out of going at the last minute; and that later when they met, defendant stated he had obtained a list of Des Moines customers, had made the purchase contact, and did not need Sloan any more.

Dewey Beaver testified that he had obtained films from Persich in Peoria, Illinois to sell in Des Moines, Iowa; that Persich was a manufacturer of films;[1] that he had met with Sloan and the defendant in a Des Moines tavern in January, 1964, at which time films were sold to defendant that he had

---

1. Persich is sometimes referred to as a distributor. There is evidence of Persich's using the technique of copying films and selling the copies. The price of the film, at least at retail, was scaled to its quality or clarity.

bought in Peoria; that after this meeting he decided to quit selling the films; that sometime later, in mid-February, 1964, defendant inquired where he was getting his films and he told him from Peoria; that at defendant's request he called Persich in Peoria and arranged for defendant to buy films from him; and that defendant was to pay him $50.00 for making the call. Beaver further testified that he and Waldo Lynch, an inspector for the Food and Drug Administration, met defendant in a tavern in April, 1964; that at this meeting they discussed films and Lynch purchased a film entitled "Make Up" from defendant for $10.00;[2] that defendant led them to believe that the film Lynch purchased had come from Peoria, Illinois because defendant related to them his fear of being arrested on the return trip from Peoria after he had bought a stock of films from Persich.[3]

Waldo W. Lynch, an inspector for the Food and Drug Administration, testified that he was in Des Moines, Iowa with Dewey Beaver on or about April 20, 1964 and met with defendant inside Marilyn's Lounge; that he purchased an eight-millimeter pornographic movie film entitled "Make Up" from defendant for $10.00; that the film he purchased was one of several he saw underneath the front seat of defendant's automobile; and that defendant discussed the film business with Lynch and advised that he had invested about $300.00 and had already received a profit of about $3,000.00 from selling the films.[4]

Thus, the testimony reflects that defendant knew that Persich manufactured films in Peoria, Illinois; that defendant had made a previous attempt to acquire films from Persich by sending Sloan to Peoria; that when Sloan backed out defendant paid Beaver $50.00 to arrange a contact for defendant with Persich to purchase films; that defendant went to Peoria and bought films from Persich and transported the films from Peoria, Illinois to Des Moines, Iowa; that defendant sold one of the films so pur-

2. It was stipulated by defendant that this was a lewd, lascivious and filthy film under the law as provided for in 18 U.S.C. § 1465.

3. Witness Beaver's testimony relative to this conversation follows:

"A. Well, the conversation began by his relating his fear of driving back from Peoria, after picking up some film from Mr. Persich and coming over the bridge at Burlington, Iowa, and he saw the state patrol parked on the Illinois side of the bridge, and then when he got to the Iowa side he saw the Iowa patrol sitting there, and he said it was really shaking. He was very scared that he was going to be caught right there and stopped and caught with the film after crossing the state line. And he talked about how relaxed he was when he got about a half a block or a block away and he noticed that he had not pursued him. And the supposedly roll of film that was purchased at the Marilyn's Lounge was part of that supply that he picked up on that trip.

"Q. Did Mr. Kirschbaum indicate on that date his source of the film?

"A. He talked about Mr. Persich, how Mr. Persich had told him the best route to take back to Des Moines was go over the Burlington Bridge. He said it was the safest route and would stand less chance of detection."

4. Mr. Lynch relates the substance of this conversation as follows:

"Q. Did he indicate to you where he purchased this stock of film?

"A. Yes, sir, he did.

"Q. And where was that?

"A. Peoria, Illinois.

"Q. Did he indicate who his source was?

"A. Yes, he did.

"Q. Who was that?

"A. Andy Persich.

"Q. Did you discuss with Mr. Kirschbaum his trip to Peoria?

"A. Yes.

"Q. Would you relate the substance of that conversation?

"A. Well he related to myself how he had gone to Peoria, Illinois in his personal automobile, accompanied by his wife, I believe, and the fear and anxiety that he had underwent when he was returning with the film in his car, and when he had to cross the river from Illinois into Iowa. The apprehension and fear that he experienced, due to the fact that there were police officers on the bridge at either end, just caused him to have grave fears that he might be caught."

chased in Peoria to Lynch, an inspector for the Food and Drug Administration, in Des Moines, Iowa; and that defendant told Lynch and Beaver that he had made $3,000.00 selling films from a $300.00 investment.

■■ "Under federal law a conviction can rest upon the uncorroborated testimony of an accomplice if it is not otherwise unsubstantial on its face. Williams v. United States, 8 Cir., 328 F.2d 256, 259. Obviously, a conviction can rest upon the uncorroborated testimony of a credible witness who is not an accomplice." Patterson v. United States, 361 F.2d 632, 634–635 (8th Cir. 1966).

■ The witnesses testifying in this case corroborated each other's testimony and, of course, Lynch and Sloan were not accomplices. The evidence they gave, standing uncontradicted, is not consistent with any theory except the defendant's guilt, and certainly was sufficient to warrant the jury's finding defendant guilty of both the substantive crime and the conspiracy. As this court said in Cave v. United States, 390 F.2d 58, 69 (8th Cir. 1968), *cert. denied*, 392 U.S. 906, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968):

> "It is well established that the gist of the offense of conspiracy is agreement among conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy."

■ The district attorney informed the court out of the presence of the jury that Dewey Beaver did not want to reveal his present address in Kansas City because of his fear for the safety of his family. The court ruled that, under the circumstances, this witness would not be required to reveal his address unless it had some bearing on the case. The court very cautiously pointed out to defense counsel that he could interrogate the witness on cross-examination about anything relevant to the case up to and including the witness' present address if that were relevant, but counsel never at any time offered any relevant reason for the question. Counsel for defendant persisted, however, in asking this witness on cross-examination where he presently lived and the following occurred:

> "Q. And where do you live?
>
> "MR. FREEMAN: Same objection. This has been gone over. If we want to discuss this from a legal standpoint, we will ask that the jury be released again from the Courtroom. This matter has been discussed prior to this occasion. It is part of this record. And I object to this procedure.
>
> "THE COURT: Mr. Beaver, the Court understands and has been advised out of the presence of the jury that you do not desire to disclose your present address for reasons that have nothing to do with this trial. Is that correct?
>
> "THE WITNESS: Yes, sir.
>
> "THE COURT: You need not answer that question."

Under the circumstances, defendant could not have been prejudiced by the court's restricting the cross-examination on this one particular question. The trial court has wide latitude in matters of this sort, and certainly did not abuse its discretion by the ruling made. Ramsey v. United States, 332 F.2d 875, 879 (8th Cir. 1964); Bass v. United States, 326 F.2d 884, 890 (8th Cir. 1964), *cert. denied*, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964).

■ Defendant next argues that the court erred in failing to strike the testimony of witness Sloan. Sloan's testimony revealed the nature of the conspiracy. He identified Persich and Curtis of Peoria, Illinois as distributors of films. He made a trip to Peoria with Beaver in early 1964 where he contacted both Curtis and Persich. Sloan discussed with defendant the selling of films, and defendant actually engaged Sloan to go to Peoria to pick up films. Defendant furnished money for the films as well as a bus ticket, but Sloan changed his mind, and when he later told defendant that his

part of the deal was off Sloan was informed by defendant that he was not needed any more as defendant had been able to obtain Sloan's sales list and also was able to make the purchase contact. His testimony disclosed defendant's intent to buy the films in Peoria from Persich and sell the films in Des Moines. We have held that generally evidence of the conduct of the accused shortly before the offense which is inconsistent with his innocence is relevant and admissible. Gicinto v. United States, 212 F.2d 8, 11 (8th Cir. 1954), *cert. denied,* 348 U.S. 884, 75 S.Ct. 125, 99 L.Ed. 695 (1954). In our view, the evidence of this witness was competent as related to both the substantive and conspiracy charges in the indictment.

Finally, it is contended that the court erred in permitting witness Lynch to testify as to his present recollections because before the trial he had reviewed a prior statement he had made some three years before to the FBI. The defense was furnished a copy of this statement when Lynch took the witness stand, and Lynch did not refresh his memory while on the witness stand. On cross-examination, Lynch testified that his testimony was based on his memory, but he apparently was confused by some of the questions commencing with the query as to whether he had any independent recollection as to what happened on April 20, 1964 other than what he had reviewed in the statement, and his answer was "no, sir." When this confusion arose, the court asked the witness whether after looking at the notes it had caused him to refresh his memory as to the events that occurred back in 1964, and he said that it did. When asked by the court whether his testimony was based solely on what

was in the notes, his answer was "no, sir. I had a recollection but I was trying to follow as closely to the statements I made, in my testimony. Therefore, I— so I wouldn't err."

▮ The court observed that the examination of the witness indicated that he was testifying to several matters not contained in the statement he furnished the FBI, and held his testimony admissible. This is not the type of testimony condemned by reason of reading from a statement. As noted, the witness had merely refreshed his memory by reading the statement before commencement of trial. It had been some three years since the events in question and the witness had a perfect right to read the statement at that time and refresh his memory. In Redfearn v. United States, 375 F.2d 767 (5th Cir. 1967), the court stated:

"We have carefully considered the contention of the appellants that the trial court erred in permitting the principal prosecution witness to testify extensively from a statement made up by him from his original field notes, thereafter destroyed. It is clear from a reading of the transcript of the trial that the witness testified that his recollection was refreshed by the written statement. We, therefore, conclude that the trial court did not err in permitting his testimony to be received in evidence even though on some occasions he stated that without reference to the written statement he could not recall all of the events that had transpired." [5]

Having considered all assignments of error advanced and finding them to be without merit, the judgment of conviction is affirmed.

---

5. See and compare Sayen v. Rydzewski, 387 F.2d 815, 819, 320 (7th Cir. 1967).