UNITED STATES of America,
Appellee,

v.

Billy David DICKENS, Appellant.

No. 19522.

United States Court of Appeals
Eighth Circuit.

Nov. 10, 1969.

Van Oosterhout, Chief Judge, dissented.

Murry L. Randall, St. Louis, Mo., for appellant.

James J. Shoemake, Asst. U. S. Atty., St. Louis, Mo., for appellee; James E. Reeves, U. S. Atty., St. Louis, Mo., with him on the brief.

Before VAN OOSTERHOUT, Chief Judge and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The appellant was convicted of knowingly possessing stolen property in violation of Section 659, Title 18, United States Code. He was sentenced to ten years imprisonment. His primary con-

tention here is that the trial court erred in restricting the cross-examination of the government's principal witness and admitted accomplice, Allen Reinhardt, and that such restriction denied the appellant the Sixth Amendment right of an accused to confront the witness against him. The appellant specifies the following restrictions of cross-examination in asserting denial of his constitutional rights:

(1) Refusal to permit inquiry as to whether the Assistant United States Attorney had promised Reinhardt immunity.

(2) Refusal to permit inquiry into the location of Reinhardt's residence.

A brief review of the direct testimony of Reinhardt and William E. Murphy, another accomplice, is necessary to an understanding of the issue raised. The testimony showed that: Reinhardt owns and operates a small machine shop in St. Louis County. He is also a part-time police officer with over fourteen years of police experience. Murphy is his employee and best friend, as well as an occasional private investigator. They both had known the appellant for approximately a year and a half, having sought him out in an attempt to locate some stolen property. Early on the morning of March 15, 1968, Reinhardt received a call from the appellant requesting the temporary use of his shop to store some TVs until the appellant could load them onto another truck. Reinhardt gave his approval and then called Murphy. Reinhardt and Murphy met and went to the shop. A short time later, at approximately 5:00 A.M., they were met by the appellant and several other men, one of whom was driving a large truck. The truck backed into the shop and unloaded. This truck was then driven away. Later that morning, the appellant and Murphy rented three other trucks. The merchandise was loaded onto these trucks and driven by Murphy, the appellant and another individual to a location in South St. Louis, where it was left. Reinhardt and Murphy subsequently received some of the merchandise which they then sold. An observation of one of these sales on April 10, 1968, led the F.B.I. to Reinhardt and Murphy in June of that year, and resulted in these charges.

The testimony of Reinhardt was extremely critical. It provided a direct link between the alleged offense and the appellant. It was corroborated primarily by Murphy and a witness related to Murphy.[1] Reinhardt was an accomplice by his own admission. If the jury believed his testimony, the appellant's conviction was a certainty. Thus, of necessity, the appellant was forced to attack his veracity and credibility. In such a situation, the necessary scrutiny can only be effected by a searching and wide ranging cross-examination. Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953); District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937); Beaudine v. United States, 368 F.2d 417 (5th Cir.1966); Spaeth v. United States, 232 F.2d 776 (6th Cir.1956); Sandroff v. United States, 158 F.2d 623 (6th Cir. 1946). The right of a defendant to engage in such cross-examination is an essential requirement for a fair trial. Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). While the scope and extent of the cross-examination is within the sound discretion of the trial court, Smith v. Illinois, supra; Bass v. United States, 326 F.2d 884 (8th Cir.), cert. denied, 377 U.S. 905, 84 S.Ct. 1164,

1. The government introduced truck rental contracts from U-Haul and Avis in an attempt to corroborate the testimony of Reinhardt and Murphy. Two of the contracts were signed with the appellant's name. Mr. Gordon Davenport, proprietor of the U-Haul Agency and a cousin of Murphy, identified the appellant as the individual who rented the truck from him and identified a codefendant as the individual who returned the truck. The District Manager for the Avis Rent-A-Car System was not able to identify the person who had signed the appellant's name to the rental contract.

12 L.Ed.2d 176 (1964), wide latitude is crucial when the testimony of an accomplice is involved. Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L. Ed. 447 (1953), rev'g 196 F.2d 886 (7th Cir.1952); Rossi v. United States, 9 F. 2d 362 (8th Cir.1925). *Cf.*, District of Columbia v. Clawans, *supra.*

The first restriction to be considered is the trial court's refusal to permit the appellant's counsel to ask Reinhardt whether an Assistant United States Attorney had promised him immunity from prosecution. The record shows that the appellant's counsel, in cross-examining Reinhardt, elicited the fact that Reinhardt had been promised immunity from prosecution while before the grand jury.[2] It was also brought out that Reinhardt had been arrested by police officials of the City of St. Louis in connection with his activities in this case, but never charged with an offense. However, the trial court twice sustained hearsay objections by the government when the appellant's counsel asked whether the immunity had been promised by Mr. Francis Murrell, an Assistant United States Attorney.[3] Further, on closing argument, counsel for a codefendant was prevented from arguing that Reinhardt had been promised immunity in return for testifying.[4]

The basis for the government's objections is not clear.[5] Whether or not a promise was actually made by the Assistant United States Attorney was irrelevant; the crucial factors were the witness' motive, state of mind and expectation in testifying. Spaeth v. United States, *supra*; Sandroff v. United States, *supra.*

The source and the nature of the promise—whether it was in fact made or merely existed in Reinhardt's mind— was important to the jury's determinations. The fact that Reinhardt believed the promise was made by the Assistant United States Attorney—"a representative [who] was in position to implement * * * any promise of consideration"

---

2. We agree with the government that the grand jury transcript gives no indication that immunity had been granted. However, the trial transcript, pages 68 and 69, clearly shows that Reinhardt testified that he had been granted immunity in the grand jury room. See, note 3, *infra.*

3. Cross-examination into the promise of immunity proceeded, in its entirety, as follows:

"Q. And you were told by Mr. Murrell, Assistant United States—
"Mr. Shoemake: I am going to object to what he was told by Mr. Murrell; hearsay.
"The Court: Be sustained.
"Q. (By Mr. Randall) Sir, were you promised that you would not be prosecuted if you cooperated? A. Yes, sir.
"Q. All right. And you were promised that by Mr. Francis Murrell, Assistant United States Attorney, weren't you, sir?
"Mr. Shoemake: Objection. That would be hearsay, Your Honor.
"The Court: Be sustained.
"Mr. Randall: Why?
"The Court: All right. I sustained it. I am not arguing with you.
"Q. (By Mr. Randall) And you were made that promise you said you were

made, in the grand jury room, weren't you, sir? A. Made what promise, sir?
"Q. Promise that you would not be prosecuted? A. Yes, sir.
* * * * *
"Q. You have never been arrested in connection with it? A. In connection with it?
"Q. This crime? A. Yes, sir.
"Q. Were you arrested in connection with this crime? A. Yes, sir.
"Q. And by whom were you arrested, sir? A. By the City of St. Louis.
"Q. I see. But you weren't charged? A. No, sir.
"Mr. Randall: That's all."

4. The conversation went as follows:
"Mr. Baris: * * * You have got a man who wears a badge, who is a police officer, and who comes in and admits to you—and why does he admit to you? Because in that grand jury room they told him, 'You testify the way we want, and we are not going to prosecute you.'
"Mr. Shoemake: I will object to that, Your Honor. There is no evidence.
"The Court: Well, that is certainly outside the record, Mr. Baris. There is no evidence of what he was told."

5. See, Harris v. United States, 371 F.2d 365, n. 1 at 367 (9th Cir. 1967).

—might well have affected the jury's view of Reinhardt's credibility. Napue v. Illinois, 360 U.S. 264, 270, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Thus, the trial court's ruling was clearly erroneous.

■ The government contends, however, that even if the rulings were erroneous,[6] they were not so prejudicial as to require a reversal. We cannot agree. The Supreme Court has consistently found that where the Sixth Amendment right of cross-examination has been abridged, prejudice need not be shown:

> "* * * [It] ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. * * *" Alford v. United States, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1930); quoted in Smith v. Illinois, supra, 390 U.S. at 132, 88 S. Ct. at 748.

While these words were addressed to a denial of inquiry into the residence of a witness, we feel they are equally applicable here.

This is not a case in which the prohibited inquiry was merely repetitious or cumulative, the question having been fully explored earlier. See, United States v. Migliorino, 238 F.2d 7 (3rd Cir.1956); Touhy v. United States, 88 F.2d 930 (8th Cir.1937). Cf., Harris v. United States, 371 F.2d 365 (9th Cir. 1967). As we said in Touhy v. United States, supra, 88 F.2d at 934, "* * * It is only after the right of cross-examination has been substantially and thoroughly exercised that the allowance of further cross-examination becomes discretionary with the trial court.

* * *' " Here, merely the surface had been scratched; the source of the promise along with its contents and nature were essential to a substantial and thorough exercise of the right of cross-examination, Napue v. Illinois, supra. The error of the lower court in restricting cross-examination into the promise of immunity compels us, therefore, to reverse the conviction and remand to the District Court for a new trial.

The appellant also asserts that the trial court's ruling sustaining an objection to cross-examination into the location of Reinhardt's residence was erroneous and requires reversal. In light of the necessity of retrial on the immunity question and the apparent concession of error by the government, it is not necessary for us to decide this question. However, since a new trial is to be granted, we will discuss the issue. We agree that the ruling was erroneous. Smith v. Illinois, supra; Alford v. United States, supra. As was said in Alford and reiterated in Smith:

> "The question 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed." 282 U.S. at 693, 51 S.Ct. at 220; 390 U.S. at 132, 88 S.Ct. at 748.

The government argues that since the testimony indicates that the appellant was familiar[7] with Reinhardt and that Reinhardt was placed in his general environment, the requirements of Alford v. United States, supra, were met. We cannot agree. A similar argument was made by the Seventh Circuit in United States v. Garafolo, 385 F.2d 200 (7th

---

6. At oral argument, the government appeared to concede that the rulings as to immunity and residence were erroneous, but maintained that the error was not prejudicial.

7. The evidence indicated that the appellant: (1) had known Reinhardt for about a year and a half; (2) had called Reinhardt at his home; (3) had visited Reinhardt at his machine shop; (4) had knowledge of Reinhardt's part-time position as a police officer; and (5) had knowledge that Reinhardt resided in Overland, Missouri.

Cir.1967). There, the principal witness was allowed to be questioned concerning his address at an earlier point in time, his cooperation with the government in this case, his previous convictions and arrests, possible monetary compensation, and possible promises of leniency; but not as to his address at the time of trial. In affirming the conviction, the Court said:

> "* * * [The witness] was sufficiently identified with his community to enable appellant to investigate his reputation for truth and veracity in that community. His personal character was deeply probed by defense counsel." 385 F.2d at 207.

On certiorari, the Supreme Court vacated the judgment of the Court of Appeals and remanded the case to that Court for further consideration in light of Smith v. Illinois, *supra*, decided the same day. Garafolo v. United States, 390 U.S. 144, 88 S.Ct. 841, 19 L.Ed.2d 970 (1968) (Per Curiam). The Seventh Circuit subsequently reversed the conviction and remanded the case to the District Court for a new trial. United States v. Garafolo, 396 F.2d 952 (7th Cir.1968). *Cf.*, United States v. Varelli, 407 F.2d 735 (7th Cir.1969).

The government also seeks to distinguish this case from Smith v. Illinois, *supra*, and Alford v. United States, *supra*, by citing Kirschbaum v. United States, 407 F.2d 562 (8th Cir.1969) and United States v. Rich, 262 F.2d 415 (2d Cir.1959). Neither the holding nor the rationale of either of those cases is applicable here. In those cases, it was held that where danger to the witness is involved, the trial judge has discretion to prohibit inquiry into the witness' address, at least in the absence of a showing of materiality or relevancy by defense counsel. See also, United States v. Varelli, *supra*. Here, there was no such showing of danger to the witness. In fact, the government's earlier argument that the appellant was familiar with Reinhardt and his locale negates the force of this argument.

■ The appellant asserts further instances of alleged restriction of cross-examination as bases for reversal. We feel it unnecessary to rule on these assertions. We note only that a defendant is entitled broad latitude in cross-examining adverse witnesses. The scope of the direct testimony should not be strictly construed. Cross-examination may be used to bring out facts which tend to contradict, modify or explain the direct examination. · Atlantic Greyhound Lines v. Isabelle, 81 U.S.App.D.C. 221, 157 F.2d 260 (1946); Banning v. United States, 130 F.2d 330 (6th Cir.1942), cert. denied, 317 U.S. 695, 63 S.Ct. 434, 87 L.Ed. 556 (1943). See also, United States v. Augustine; 189 F.2d 587 (3rd Cir.1951).

■■ In reaching this decision, we are aware that Murphy's testimony closely paralleled that of Reinhardt and that the restriction compelling reversal was not present in the cross-examination of Murphy. These facts, however, do not persuade us that the error committed was harmless. We cannot say that the error "* * * had but very slight effect." Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); Thurman v. United States, 316 F.2d 205 (9th Cir.1963). Nor can we say that the error was " * * * harmless beyond a reasonable doubt." Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The "special facts" of *Harrington* are not present here. The determination of the Court in *Harrington* that "* * * apart from [the evidence erroneously admitted] the case against Harrington was so overwhelming that * * * this violation * * * was harmless beyond a reasonable doubt * * *" distinguishes that case from the one here. Other than the testimony of Reinhardt and Murphy, there was scant evidence linking the appellant to the alleged offense. The record clearly demonstrates that the relationship between Reinhardt and Murphy was close and substantial;

a successful attack on the credibility or veracity of either accomplice could reasonably be expected to detract from the testimony of both.

For the reasons given herein, a new trial is ordered. The judgment of the District Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

VAN OOSTERHOUT, Chief Judge (dissenting).

I agree with the view of the majority that the court unduly restricted the cross-examination of the prosecution's witness, Reinhardt. I disagree with the majority view that the error was prejudicial. I would affirm the conviction.

All federal constitutional errors do not compel a reversal. The Supreme Court has recognized a harmless error rule for violations of some constitutional rights. The test as set out in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, is thus stated: "[T]he court must be able to declare a belief that it was harmless beyond a reasonable doubt."

In Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284, the Court held that a Bruton violation can be harmless error. From the *Harrington* case it would follow that the harmless error rule is to be applied in denial of confrontation cases.

The strength of the Government's case is entitled to consideration in resolving the harmless error issue. Harrington v. California, supra; Bass v. United States, 8 Cir., 326 F.2d 884, 890; Homan v. United States, 8 Cir., 279 F.2d 767, 771.

In the case before us, the evidence of defendant's guilt is strong. There is strong evidence apart from that of Reinhardt to support the conviction.

With respect to the restriction of cross-examination of Reinhardt on immunity, footnote 3 to the majority opinion shows Reinhardt testified that an immunity promise was made to him in the grand jury room and that he had not been prosecuted for his part in the offense. From this testimony, it is apparent that Reinhardt conceded that he had a deal with the Government not to prosecute him, which deal had been carried out. Apparently this testimony was not denied. It is difficult to see where further development of this phase of the testimony would be of any benefit to the defendant.

On the issue of Reinhardt's residence, it appears from footnote 5 to the majority opinion that defendant had complete information with respect thereto and thus was in a position to make any desired investigation. I am unable to see how under the circumstances of this case the development of residence evidence would be of any benefit to the defendant.

In my view, the Government has established that the asserted errors are harmless beyond a reasonable doubt.