STATE of Missouri, Plaintiff-Respondent,

v.

Eugene C. KIRK, Defendant-Appellant.

No. 35360.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 21, 1974.

Lee & Randall, Lawrence J. Lee, Murry L. Randall, Robert O'Hanlon, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Dan Summers, Asst. Atty. Gen., J. Brendan Ryan, Circuit Atty., Julian Cosentino, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

Defendant was charged by indictment with robbery in the first degree by means of a dangerous and deadly weapon and with assault with intent to maim with malice aforethought. The jury returned a general verdict of guilty for robbery first degree by means of a dangerous and deadly weapon and a general verdict of guilty for assault with intent to maim without malice. The defendant was sentenced to fifteen years for the robbery and five years for the assault. On appeal, defendant does not question the sufficiency of the evidence, but urges eight other assignments of error.

The conviction arose out of an occurrence on the evening of March 2, 1972. Facts favorable to the verdict indicated that the defendant and two other men entered the Glaser Drug Store, located at 40 North Euclid in the City of St. Louis, and announced a hold-up. In the store at the time were the assistant manager, Melvin Shoults, a clerk, Harriet Coleman, and a former employee, Sam Dunn. Moments after the hold-up was announced a customer, Gertrude Parker, entered the store. A total of $987.00 was taken from two cash registers and the store's safe. After being ordered to the rear of the store, Mrs. Parker was struck in the head with the butt end of a revolver. Gary Young, a probationary officer, observed three men come out of the drug store and run east on West Pine. They entered a car and drove off. While attempting to follow them, Young observed their license number and the make and model of their car. The following day, March 3, 1972, Officer Daniel Bauer of the St. Louis Police Department observed the hold-up car, which was occupied by the three suspects. The car was stopped and the three occupants were placed under arrest. At a lineup conducted later that day, all three subjects were positively identified by Dunn, Coleman, Shoults, and Young. In-court identifications of the defendant were also made.

The first contention of error advanced by defendant is directed to the action of the trial court in allowing the prosecuting attorney to cross-examine defendant as to whether he changed coats with a Leonard Crenshaw, one of the men arrested with him, prior to the lineup. On direct examination defendant testified that he did not rob or participate in the robbery of a drugstore on March 2, 1972. Over objection that it was outside the scope of his direct examination, the defendant was cross-examined concerning the events of the lineup, whereupon he admitted that he had changed coats with Crenshaw at police headquarters prior to the lineup.

Section 546.260, RSMo 1969, V. A.M.S., provides that if an accused elects to testify in his own behalf, he shall be liable to cross-examination "as to any matter referred to in his examination in chief, * * *." This has been interpreted to mean that the state is not limited to a mere categorical review of the subject matter covered in direct examination of a defendant, but that the cross-examination may cover any matter within the fair purview of the direct examination. State v. Dalton, 433 S.W.2d 562, 563 [3] (Mo.1968). Furthermore, our courts have held that where

a defendant enters a general and complete denial of the offense charged, he may be examined in detail as to the whole subject of whether or not he committed the offense. State v. Lamborn, 452 S.W.2d 216, 218 [6, 7] (Mo.1970); State v. Kaufman, 254 S.W.2d 640, 641 [3] (Mo.1953). In this case the evidence that defendant and another person had changed coats before the lineup tends to show a consciousness of guilt, or a desire or disposition to conceal the alleged crime. Therefore, the question asked defendant on cross-examination was within the purview of the question asked on direct examination of whether or not he participated in the robbery.

Defendant next argues that the court abused its discretion in permitting the rebuttal testimony of Officer Bauer and Detective Alphin. Defendant, on cross-examination, testified that on the day of his arrest he was wearing a green corduroy coat, and that he did not have on a leather coat. On rebuttal Officer Bauer testified, over objection, that when arrested defendant was wearing a brown leather coat and Crenshaw had on a three-quarter length green corduroy coat. Detective Alphin testified that after the lineup he observed that defendant had on a green corduroy coat and Crenshaw was wearing a brown leather coat, and that they were in the process of exchanging coats. Defendant contends that this testimony was improper rebuttal evidence because it was cumulative in nature, and further because it failed to impeach, contradict or explain the evidence offered by him.

■■ Our courts have consistently held that any competent testimony that tends to counteract or disprove evidence offered by a defendant may be offered in rebuttal of the defendant's testimony or evidence. State v. Williams, 442 S.W.2d 61, 65 [7] (Mo. banc 1968), overruled on other grounds, State v. Ayers, 470 S.W.2d 534, 537 [6] (Mo. banc 1971); State v. Woods, 346 Mo. 538, 142 S.W.2d 87, 90 [7] (1940). In State v. Williams, *supra* 442 S.W.2d at 65, the court stated that the scope of rebut-

tal testimony is largely within the discretion of the trial court, and unless the defendant's rights are prejudiced or the trial court abuses its discretion, a reviewing court will not reverse even though the testimony may not, strictly speaking, be proper rebuttal evidence. It is apparent from the record that the rebuttal testimony of the two officers did tend to contradict defendant's repeated testimony that he was wearing a green corduroy coat at the time of his arrest. The defendant has not demonstrated any prejudice by this evidence and our examination of the record discloses none. We see no indication that the trial court abused its discretion.

■■ Error is also assigned to the action of the court in sustaining the objection to defense counsel's closing argument wherein he stated: "There is no evidence that his fingerprints were found inside the place, * * *." It is a well known rule that an attorney should not argue matters not in evidence. State v. Cuckovich, 485 S.W.2d 16, 27 [21] (Mo. banc 1972); State v. Swing, 391 S.W.2d 262, 265 [3] (Mo.1965). Our examination of the record fails to disclose that the statement in question was supported by any testimony elicited at trial. We accordingly rule that no error has been shown.

For his fourth point relied on, defendant Kirk contends that he was deprived of his right of confrontation of witnesses when the court below prevented defense counsel from cross-examining a state's witness, Sam Dunn, as to his residence. On cross-examination Dunn was asked to state his present address. Objection to this question was sustained. At a conference outside the hearing of the jury, the prosecutor announced as his reason for the objection that a number of witnesses in the past had been threatened and harassed after testifying for the state. The court then directed defense counsel's attention to the fact that the address of Sam Dunn was made available to him from the list of endorsed witnesses on the indictment, and asked him to show some good reason why the man

should be compelled to give his address. When no showing was forthcoming the court stated that it felt Dunn's address had no bearing upon the credibility of his testimony.

Defendant relies on Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), and Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), for the proposition that a criminal defendant has an unrestricted right to inquire as to the residence of the state's witnesses. We do not construe the language of those cases so broadly. In *Alford*, the defense was prevented from obtaining the address of a prosecution witness, who defense counsel had reason to believe was presently in custody. In *Smith*, a crucial prosecution witness testified under a false name and the defense on cross-examination was prevented from eliciting his true name and address. The Supreme Court reversed both convictions on the ground that a witness' address is necessary for in and out of court investigation of the witness, and because knowledge of the address is helpful to a jury in its deliberations as to the witness' credibility. In both cases, however, the court noted that a trial court has a duty to protect a witness on cross-examination from questions which tend to humiliate, harass or annoy the witness. Alford v. United States, *supra* 282 U.S. at 694, 51 S.Ct. 218; Smith v. Illinois, *supra* 390 U.S. at 133, 88 S.Ct. 748. The lower federal courts have interpreted this language to include those inquiries where danger to the witness is involved. *See* United States v. Smaldone, 484 F.2d 311, 318 (10th Cir. 1973); United States v. Dickens, 417 F.2d 958, 962 (8th Cir. 1969); Kirschbaum v. United States, 407 F.2d 562, 565 (8th Cir. 1969).

 A witness may be cross-examined on irrelevant matters for the purpose of attacking his credibility, but the nature and extent of such cross-examination is largely within the sound discretion of the trial court. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 108 [38] (1935); State v. Murrell, 169 S.W.2d 409, 411 [1] (Mo.

1943). Furthermore, in order to ask questions which tend to impeach the credibility of a witness, the answers sought must affect his credibility. State v. Miller, 485 S.W.2d 435, 441 [9] (Mo.1972). In the case at bar there was no lack of knowledge on the part of defense counsel as to the address of the witness Dunn. The record indicates that the address in question was available to counsel from the list of endorsed witnesses on the indictment. Unlike *Alford* or *Smith*, the inability to elicit Dunn's address on cross-examination could not have prejudiced any in or out of court investigation of Dunn. Also, counsel for the defendant made no attempt to show that his need to bring such information out before the jury outweighed the court's interest in protecting the physical safety of prosecution witnesses. The record discloses that the jury had sufficient information with which to judge the credibility of the witness. In light of these circumstances, we cannot say the trial court abused its discretion.

During the reading of the verdict and the polling of the jury, over objection, defendant's hands were handcuffed behind his back. The trial court ruled that such action was a precautionary practice of the court to insure order and security in the event of a guilty verdict. Defendant claims that the court's action deprived him of the right to a fair and impartial polling of the jury secured by Rule 27.01(e), V.A. M.R.

 It is a well established rule in Missouri that a defendant in a criminal case should not appear before the jury during trial with his hands chained unless there be some good reason therefor based upon the defendant's conduct. Bibbs v. State, 504 S.W.2d 319, 320 [1] (Mo.App. 1973); State v. Johnson, 499 S.W.2d 371 374 [5] (Mo.1973). As pointed out in Bibbs v. State, *supra* 504 S.W.2d at 321: "This rule is based upon the obvious prejudice that must be conceived in the minds of the jurors when viewing an accused in that condition, * * *." Since none of the jurors in the case before us viewed de-

fendant in handcuffs until after they had reached a verdict there is no basis for the contention that defendant's right to a fair trial was prejudiced. Defendant offered no evidence that a juror, upon viewing the defendant handcuffed, would have given a false response during polling. Before we consider such an unfounded implication, we must have some basis for doing so other than an unsupported assumption. Under these circumstances, defendant has not been denied any substantial rights.

Defendant next asserts that Instruction No. 3, the main verdict directing instruction on robbery first degree by means of a dangerous and deadly weapon, was prejudicially at variance with the indictment in that it failed to require a finding that the robbery was committed with a pistol. Count I of the indictment charged a robbery "by means of a dangerous and deadly weapon, to-wit: pistol". Instruction No. 3 permitted the jury to convict if it found the robbery was committed "by means of a dangerous and deadly weapon".

A variance between an indictment or information and instruction is not fatal unless it is material to the merits of the case and prejudicial to the rights of the accused. Rules 24.11, 26.04. State v. Crossman, 464 S.W.2d 36, 42 [5] (Mo. 1971). The variance here was not of such a nature. An indictment charging first degree robbery by means of a dangerous and deadly weapon need only allege the language of the statute to be sufficient. Sections 560.120, 560.135, RSMo 1969, V.A. M.S.; State v. Moore, 347 S.W.2d 195, 196 [1] (Mo.1961). An instruction should not submit detailed evidentiary facts. Since the trial of this case, MAI–CR 7.62 has become effective as the instruction to use in a case of first degree robbery by means of a deadly and dangerous weapon. No provision is made therein for a description of the weapon. The word "pistol" in the present indictment is mere surplusage and therefore, such averment was unnecessary to the charge and could be disregarded in formulating the instruction. Under these circumstances, we are unable to see wherein the variance would have misled or prejudiced the defendant in any way.

Defendant has also challenged a contended variance between the assault charge and the instruction there given. Defendant was indicted for assault with intent to kill or do great bodily harm by means of hands and feet, with malice. He was convicted of felonious assault without malice, a lesser crime in magnitude and punishment. Sections 559.180, 559.190, RSMo 1969, V.A.M.S. Instructions hypothesizing an assault by striking the victim with a gun were submitted covering both crimes. The evidence showed that Mrs. Gertrude Parker, the prosecuting witness, was struck in the head with the butt end of a revolver. Defendant urges that the trial court erred in not directing a verdict of acquittal on the ground that there was a prejudicial variance between the allegation in the indictment as to the manner in which the alleged assault was made and the proof adduced at trial, and further because the same variance existed between the indictment and the instructions. We do not agree. Under a charge of assault with intent to kill or produce great bodily harm with malice aforethought, a defendant may be properly convicted of a felonious assault without malice, which is a lesser crime of the same nature. State v. Rose, 346 S.W.2d 54, 56 [2] (Mo.1961); State v. Parrish, 214 S.W.2d 558, 560 [9] (Mo.1948). In *Rose* defendant was indicted for assault with a knife with malice. He was convicted of felonious assault without malice by use of fists. The evidence supported an instruction of assault with the fists. This is a matter of detail and there is no variance as to the charge. Rules 24.11, 26.04, *supra*. The record discloses ample evidence that the assault was made with a gun and the instructions given thereon were entirely proper.

Finally, defendant complains of error in instructing the jury that the court would assess the punishment if the jury agreed on guilt but could not agree on punishment. While defendant's brief on this point fails to comply with Rule 84.-

04(d), we nevertheless have chosen to discuss this contention of error. Defendant claims that the giving of this instruction invited the jury to disregard their duty to fix punishment as well as determine guilt, and further, that it tended to mislead the jury into believing that the court could assess a punishment less than the statutory minimum. We disagree. Defendant's first argument has been made and rejected on numerous occasions and this instruction has been repeatedly approved. State v. Brown, 443 S.W.2d 805, 809 [6] (Mo. banc 1969); State v. Thompson, 465 S.W.2d 590, 593 [6] (Mo.1971). A similar instruction is now the basis of an approved criminal instruction, the giving of which is discretionary with the court. MAI–CR 4.50 (Notes on Use No. 3). Defendant gives no reason why we should consider his contention that the instruction caused the jury to believe that the trial court could impose a punishment below the statutory minimum. And an examination of the record reveals no evidentiary basis for such an assertion.

Judgment is affirmed.

SIMEONE, Acting C. J., and KELLY, J., concur.